# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00798-SCT

*CHRIS A. MILLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/2007 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/10/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., EASLEY AND LAMAR, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. Chris Miller was convicted in the Circuit Court of Winston County for the sale, transfer, delivery, or distribution of cocaine, a Schedule II controlled substance pursuant to Mississippi Code Annotated Section 41-29-139 (a)(1)(b)(1) (Rev. 2005). Miller was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections with a fine of five thousand dollars, court costs and assessments, and driving privileges suspended for a period of six months. Miller timely filed a motion for a judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial. The trial court

denied the post-trial motions. Notice of appeal was filed, and from that final judgment entered in the case, Miller appeals to this Court.

## FACTS

¶2. On June 13, 2005, two agents[1] from the Mississippi Bureau of Narcotics (MBN) met with a confidential informant (CI) to prepare for an undercover drug buy in Winston County. Pursuant to MBN policy, the agents searched the CI and his vehicle for anything that might compromise the investigation. They equipped the CI with audio and video equipment, as well as an audio transmitter, and issued him $60 in official state funds to purchase crack cocaine. Thereupon, the CI got into his vehicle and drove to Miller Avenue; the agents followed in a separate vehicle, staying close enough to hear what was going on over the CI's body wire.

¶3. Upon arriving at Miller Avenue, the CI drove up to a residence where an individual, later positively identified as Chris Miller, was sitting on the front porch. Agent 1, who was listening to their conversation via audio transmission, testified at trial that he heard the CI "[ask] the male subject for $60 worth of cocaine." Agent 1 stated that the CI left the residence a few seconds later, and that he and Agent 2 immediately got in behind his vehicle and followed him back to the meeting location.

¶4. There, the CI handed Agent 1 a sealed bag which contained what was later tested and determined by the Mississippi Crime Laboratory to be 0.52 grams of crack cocaine. The

---

[1] "Agent 1" and "Agent 2" are used for the undercover Mississippi Bureau of Narcotics Agents.

2

agents conducted another search of the CI and his vehicle for contraband and the $60 in state funds; Agent 1 testified that neither was found.[2]

¶5.     The CI testified next for the state, and told the jury that he was a confidential informant for the MBN, and had been paid by the MBN for his participation in the controlled drug buy at issue in this case. He corroborated Agent 1's testimony regarding the searches and told the jury that he had paid Miller $60 for the cocaine, which he turned over to the agents at the meeting location. At that point, the state submitted a videotape with recorded audio and video of the meeting between Miller and the CI, which the jury then viewed.

¶6.     The state concluded its case-in-chief with testimony from a toxicologist from the Mississippi Crime Laboratory, followed by an investigator from the Louisville Police Department. The toxicologist gave testimony that the substance in question was in fact cocaine. The investigator testified that, after viewing the videotape upon request by the MBN following the drug buy, he positively identified the person in the video as Chris Miller.

¶7.     During the defense's case-in-chief, Agent 1was the only witness called on behalf of the defendant. He was asked to explain why his investigation report did not contain the name of Chris Miller. The agent stated that he wrote the report before Miller had been positively identified and, as is in common practice, indicated as such by writing FNU/LNU in place of the name to indicate that the suspect's first and last name were unknown. The defense

---

[2] The record is silent as to what happened to the $60; it does, however, indicate that Miller was not arrested for the alleged offense until October 14, 2005.

presented no other evidence. The jury subsequently found Miller guilty of the sale, transfer, delivery, or distribution of cocaine.

## DISCUSSION

¶8. On appeal, Miller argues that the verdict was against the overwhelming weight of the evidence, and that the trial court erred in denying his request for a new trial. Specifically, Miller contends that, because the CI was untrustworthy and the video did not show any money being exchanged, no reasonable jury could infer that Miller received a sum of money as was factually alleged in the indictment.[3]

¶9. A motion for a new trial, based on the weight of the evidence, will be successful only when the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)); *see also* *Givens v. State*, 967 So. 2d 1, 10 (Miss. 2007) (citing *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)). The reviewing court first views all of the evidence in the light most favorable to the

---

[3] The indictment read as follows:

On or about the 13th day of June, 2005, in Winston, County, Mississippi, and with in the jurisdiction of this Court, [Chris Miller] did willfully, unlawfully, feloniously and knowingly or intentionally sell, transfer, distribute, or deliver a quantity of cocaine, a Schedule II Controlled Substance, to [CI], a human being, *and did then and there receive therefor a sum of lawful United States money*, in violation of MISS. CODE ANN. Section 41-29-139(a)(1)(b)(1), and against the peace and dignity of the State of Mississippi.

(Emphasis added).

4

verdict. ***Bush v. State,*** 895 So. 2d at 844. If the evidence clearly preponderates against the verdict, the proper remedy is to vacate the verdict and order a new trial. ***Id.***

¶10. As the state set forth in its argument on appeal, the case against Miller did not present much conflicting evidence for the jury, as fact finder, to weigh and consider. Because the defendant did not testify, as was his right, the jury was nevertheless allowed to give "full effect" to the state's evidence against Miller. ***White v. State***, 722 So. 2d 1242, 1247 (Miss. 1998).

¶11. The evidence consisted of testimony from the CI, two law enforcement officers, and an expert from the Mississippi Crime Lab; a videotape; and a package of cocaine. All the evidence was presented to the jury for its consideration and determination as to whether Miller was, beyond a reasonable doubt, guilty of violating Mississippi Code Annotated Section 41-29-139 (a)(1)(b)(1) (Rev. 2005) as charged by the state.

¶12. Miller argues two points. First, he avers that because the videotape did not show an actual exchange of money, the jury was left with only the CI's testimony as evidence that the exchange occurred. We disagree.

¶13. Although the video did not depict an actual exchange of money, it did show Miller placing something into the CI's hand. This evidence, coupled with Agent 1's testimony that he heard the CI ask Miller for $60 dollars worth of cocaine, and the fact that the CI returned to the meeting location with cocaine and without the state funds, is enough for a reasonable juror to infer that a transfer for money took place.

5

¶14. As to Miller's second point, averring that the CI was untrustworthy, this Court consistently has stood by the precept that the credibility of a witness is solely for the jury to weigh and consider. ***Harris v. State***, 970 So. 2d 151, 156 (Miss. 2007); *see also* ***Gathright v. State***, 380 So. 2d 1276, 1278 (Miss. 1980) ("[T]he credibility of witnesses is not for the reviewing court"); ***McLelland v. State***, 204 So. 2d 158, 164 (Miss. 1967) ("It is not for this Court to pass upon the credibility of witnesses . . . ."); ***Owens v. State***, 63 Miss. 450, 452; 1886 Miss. LEXIS 120, 4 (1886) ("The jury are the judges of the credibility of witnesses, and they must determine from the facts and circumstances in evidence what estimate they will place on the testimony of witnesses. . . .").

¶15. In front of the jury, defense counsel elicited testimony from the CI that he was a former drug user with a number of prior arrests and at least one probation violation. Review of the entire colloquy revealed that the CI may have been forgetful, less than forthright, or even dishonest in some of his responses to questions posed regarding his past. Nevertheless, as this Court often has said before, this was presented to the jury for its assessment in deciding how much, if any, weight and credibility it was willing to place with this particular witness for the state.[4]

---

[4] *See* ***Clayton v. State***, 582 So. 2d 1019, 1021 (Miss. 1991) (even though the main witness against the defendant was a convicted felon, an admitted drug addict, a general reprobate, and unworthy of belief, his unsavory background was thoroughly explored and the jury had the responsibility of assessing his credibility); *see also* ***Kelly v. State,*** 910 So. 2d 535, 540-41 (holding that testimony from a CI receiving reduced burglary charges in exchange for cooperating with law enforcement officials was for the jury to accept or reject); ***Hubbard v. State***, 819 So. 2d 1192, 1196 (Miss. 2001) (holding that a juror's believability, after testifying that she should not be believed, but averring that she was telling the truth

¶16. After viewing all of the evidence in the light most favorable to the verdict, we find that the evidence in this case was consistent with the verdict. Miller's assignment of error is without merit.

**CONCLUSION**

¶17. The judgment of the Circuit Court of Winston County is affirmed.

¶18. **CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY (20) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF ALL COSTS AND A FINE OF $5,000.00, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**

---

about the drug transaction in this case, was nevertheless left up to the jury to assess); *Braxton v. State*, 797 So. 2d 826, 828 (Miss. 2000) (holding that a CI's testimony that she currently uses drug and was paid money by law enforcement for each drug sale secured was for the jury to consider).