PIERCE, Justice,
for the Court:
¶ 1. David McLymont was convicted of capital murder and conspiracy to commit robbery. McLymont filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, which the trial court denied. McLymont appeals to this Court, claiming his conviction was *149 contrary to the overwhelming weight of the evidence. McLymont contends the jury relied on the testimony of a biased witness and a tape recording obtained by that witness to reach its verdict. This contention is meritless. The State presented evidence against McLymont in addition to the witness and the tape recording in question. Also, under our system of jurisprudence, credibility determinations lie within the province of the jury. Accordingly, the trial court did not err when it denied McLymont’s post-trial motion.
FACTS
¶2. In November 2008, Carlos Buford, an active member in the U.S. Coast Guard on short leave from duty, traveled by car from his home in Florida to Clarksdale, Mississippi, to meet a friend. While lost in Clarksdale, Buford pulled into a parking lot and called his friend for directions. As Buford sat in his car, three men approached on foot. The three men, David “Julio” McLymont, Dennis “Ray Ray” Thompson, and Daniel “Danny” Starks, asked Buford for a ride to a local club. Buford obliged. McLymont sat in the front passenger seat, and Thompson and Starks sat in the back seat. According to Starks, McLymont and Buford spoke briefly and then McLymont “dove” for a gold crucifix necklace around Buford’s neck. Buford, using his own gun, tried to shoot McLymont. The bullet grazed McLymont’s leg and lodged into the passenger-side floorboard. Thompson then shot Buford fatally in the back of the head. Starks jumped out of the vehicle and ran home.
¶ 3. McLymont and Thompson arrived at Starks’s house soon thereafter. They told Starks that the man had died, and they showed him the gold necklace they had taken from him. Starks noticed a “hole” in McLymont’s leg, and Starks recalled telling McLymont he should go to the hospital.
¶ 4. Later that evening, the three men went to “Friars Point.” There, Starks heard McLymont and Thompson tell others they had murdered a “dude” and had taken a gun and a “charm” from him.
¶ 5. Meanwhile, Clarksdale authorities discovered Buford’s vehicle with Buford’s deceased body inside. During their investigation, a confidential informant told investigators that Charles Hollins likely had information about Buford’s death. Hearing that authorities were looking for him, Hollins came to the police station on his own volition and told investigators that he knew who had killed Buford. Believing that he might be implicated in the murder, Hollins asked to be released to “prove [his] innocence.” Investigators allowed Hollins to leave the station and provided him with a small tape recorder. Hollins later returned with a taped confession, which he claimed came from McLymont. Upon forensic investigation of Buford’s car, investigators found McLymont’s right thumb print and palm print on the passenger-side door, consistent with Starks’s statements and the tape-recorded confession.
¶ 6. McLymont was indicted for capital murder and conspiracy to commit robbery. The State presented evidence at trial that McLymont and Thompson had planned to rob Buford for money to spend at a club that night. After a three-day trial, a jury found McLymont guilty on both counts. The trial court sentenced McLymont to life in prison without the possibility of parole for the capital-murder conviction and five years for the conspiracy conviction, all in the custody of the Mississippi Department of Corrections.
ANALYSIS
¶ 7. The sole issue on appeal is whether the trial court erroneously denied *150 McLymont’s motion for a new trial on the basis that the jury’s verdict was against the overwhelming weight of the evidence. Specifically, McLymont contends the jury’s verdict was based on McLymont’s alleged confession, which was recorded by Hollins, a convicted felon, out on parole, who would stop at nothing to avoid prison. McLy-mont acknowledges that the State presented additional evidence against him. But McLymont submits that such evidence, standing alone, is too attenuated to sustain the jury’s verdicts. We disagree.
¶ 8. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (Miss.2005). Further, this Court must assume that the fact-finder believed the State’s witnesses and disbelieved any contradictory evidence. Griffin v. State, 607 So.2d 1197, 1200-01 (Miss.1992). A motion for a new trial should be granted only in “exceptional eases in which the evidence preponderates heavily against the verdict.” Weatherspoon v. State, 56 So.3d 559, 564 (Miss.2011).
¶ 9. Here, because McLymont did not testify or present any witnesses on his behalf, the jury was entitled to give “full effect” to the State’s evidence against him. Miller v. State, 983 So.2d 1051, 1054 (Miss.2008) (quoting White v. State, 722 So.2d 1242, 1247 (Miss.1998)). The evidence, as mentioned above, included Starks’s eyewitness testimony, testimony of corroborating witnesses, a taped confession, McLymont’s fingerprints on Buford’s vehicle, as well as other forensic evidence and a leg wound consistent with what Starks testified occurred inside Buford’s vehicle and what McLymont allegedly told Hollins.
¶ 10. Whether Hollins was a credible a witness-despite being a convicted felon and potential suspect in the investigation-was a determination for the jury, not this Court. Miller, 983 So.2d at 1054. “[T]he credibility of witnesses is not for the reviewing court.” Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). McLy-mont had and took the opportunity in front of the jury to question the credibility of all of the State’s witnesses and to bring out any inconsistencies or biases they may have had. And even without Hollins’s testimony or McLymont’s alleged tape confession, the State presented ample evidence to support its case against McLymont.
¶ 11. For these reasons, this Court finds that the overwhelming weight of the evidence supports the jury’s verdicts. Thus, the trial court did not err in denying McLymont’s motion for judgment notwithstanding the verdict or for a new trial.
CONCLUSION
¶ 12. The judgment of the Circuit Court of Coahoma County is affirmed.
¶ 13. COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ„ CONCUR.