IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

NO. 2014-KA-01078-COA

ANTWAIN D. THOMAS A/K/A ANTWAIN                    APPELLANT
DARRIEL THOMAS A/K/A ANTWAIN THOMAS

v.

STATE OF MISSISSIPPI                               APPELLEE

DATE OF JUDGMENT:            09/04/2012
TRIAL JUDGE:                 HON. ROBERT WALTER BAILEY
COURT FROM WHICH APPEALED:   CLARKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: GEORGE T. HOLMES
                             PHILLIP BROADHEAD
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: SCOTT STUART
DISTRICT ATTORNEY:           BILBO MITCHELL
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF SALE OF COCAINE AND
                             SENTENCED AS A SUBSEQUENT DRUG
                             OFFENDER AND HABITUAL OFFENDER
                             TO SIXTY YEARS IN THE CUSTODY OF
                             THE MISSISSIPPI DEPARTMENT OF
                             CORRECTIONS AND TO PAY A FINE OF
                             $5,000
DISPOSITION:                 AFFIRMED - 02/23/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.

WILSON, J., FOR THE COURT:

¶1.    A Clarke County Circuit Court jury convicted Antwain Thomas of selling cocaine,

and the court sentenced him as a subsequent drug offender and habitual offender to sixty

years in the custody of the Mississippi Department of Corrections (MDOC), with the

sentence to run consecutively to the balance of a sentence on Thomas's prior conviction for possession of cocaine with the intent to distribute. Thomas appeals, arguing that the circuit court erred by admitting hearsay, by allowing a narcotics agent to testify about the events depicted in a video of the drug sale that was admitted into evidence, and by refusing a cautionary jury instruction regarding the testimony of a confidential informant. He also argues that there is insufficient evidence to sustain his conviction and that the jury's verdict is against the overwhelming weight of the evidence. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 8, 2010, a confidential informant (CI) told Lieutenant Commander Joseph Moulds of the South Mississippi Narcotics Task Force that she had arranged to buy cocaine from Thomas the next day. Moulds and Task Force Agent Billy Lewis met with the CI the next morning at a location near Highway 45 in Clarke County. The CI called Thomas in the agents' presence, although the call was not recorded. The CI told Officer Moulds and Agent Lewis that the original plan was for Thomas to meet her at her house, but during the phone call, Thomas told the CI to come to his girlfriend's house instead. The agents gave the CI $50 to make the buy, searched her car for drugs, and also "made her empty her pockets" and "shake her shirt, just to make sure [she did not] have any [drugs] concealed on [her]." The agents also gave her a small handheld video camera to use to record the buy.

¶3. At 9:27 a.m., the CI left in her car to drive the few miles to the buy location. The CI returned to the agents' location fifteen minutes later with the camera and 1.5 grams of crack

2

cocaine. Officer Moulds testified that he later viewed the video and, after comparing it to pictures of Thomas, confirmed that Thomas was the man on the video. A copy of the video was admitted into evidence without objection. At trial, the video was not played in open court, but the jurors were told that they could watch it during deliberations. Officer Moulds testified that the "exchange in the video" was "very quick," describing it as follows: "[Thomas] takes the money out of [the CI's] hand. It appears he places something in her other hand. You can't actually see him laying crack in her hand . . . . But you can see him taking the $50. And that's approximately how much crack you get for $50[.]"

¶4.      Agent Lewis testified that he had known Thomas for ten years and had no doubt that the man on the video was Thomas. Agent Lewis also testified that an exchange of money could be seen in the video.

¶5.      The CI testified that she had known Thomas "practically all [her] life." She called him the day before the buy, and he agreed to sell her $50 worth of crack. When she arrived at Thomas's girlfriend's house, Thomas came outside, he gave her the crack, she gave him the money, and she left. At trial, she positively identified Thomas as the man who sold her cocaine on November 9, 2010.

¶6.      The CI's camera work left something to be desired, which is understandable—she was, after all, attempting to secretly videotape her own hand-to-hand cocaine buy with a handheld camera. Her verbal exchange with the man in the video is unintelligible. The man is on tape for five seconds, and his face can be seen for only a second or two. As the agents

3

testified, the CI appears to have some cash in her hand, and the man appears to take it from her, although the cash is only partly visible in the corner of the screen and is blurry. The actual exchange of cocaine is not visible.

¶7.    Several months prior to buying cocaine from Thomas, the CI had been arrested for selling approximately $20 worth of cocaine. Officer Moulds gave her an opportunity to "work off the charge" by cooperating with the Task Force and assisting in the arrest of more significant drug dealers. The CI said she was required to make "about six" buys as part of her deal; Officer Moulds recalled that she made three buys. Officer Moulds denied that he made "any promises" about the outcome of the CI's case, but he acknowledged that she was not indicted because of her cooperation and assistance. The CI testified that she "was pregnant at the time, and . . . didn't want to leave [her] kids," "so [she did] what [she] had to do"—i.e., she worked as an informant and bought drugs from Thomas and others.

¶8.    In August 2011, Thomas was indicted for sale of cocaine. *See* Miss. Code Ann. § 41-29-139 (Supp. 2015). He was also indicted as a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Supp. 2015), and as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015). The case proceeded to a jury trial in July 2012. After hearing the evidence, the jury deliberated approximately twenty-two minutes before returning a guilty verdict. As a subsequent drug offender and habitual offender, Thomas was sentenced to sixty years in the custody of MDOC, consecutive to eighteen years to serve on a prior sentence for possession of cocaine with the intent to

distribute.[1]  Thomas filed a timely notice of appeal.[2]

## ANALYSIS

¶9.      Thomas raises four issues on appeal: (1) whether the trial court erred by permitting Officer Moulds to testify that the CI told him that she had talked to Thomas and arranged to buy cocaine from him; (2) whether the trial court erred by allowing Agent Lewis to describe what the video depicted; (3) whether he was entitled to a cautionary jury instruction regarding the CI's testimony; and (4) whether there is sufficient evidence to sustain the conviction, or in the alternative, whether the jury's verdict was against the overwhelming weight of the evidence.

### I.      Hearsay

¶10.    Thomas first argues that the trial judge committed reversible error by allowing Officer Moulds to testify, over a hearsay objection, that the CI told him that she had made contact with Thomas and arranged to buy drugs.  "This Court reviews 'the admission or exclusion of evidence at trial for an abuse of discretion . . . .'" *Kirk v. State*, 160 So. 3d 685, 698 (¶37) (Miss. 2015) (quoting *Ferguson v. State*, 137 So. 3d 240, 245 (¶17) (Miss. 2014)).  "The trial

---

[1] Eighteen years had been suspended on the prior charge; however, Thomas's post-release supervision was revoked due to his conviction in this case.

[2] Phillip W. Broadhead, clinical professor and director of the University of Mississippi School of Law Criminal Appeals Clinic, was appointed as Thomas's appellate counsel.  Third-year law students under Professor Broadhead's supervision were appointed as special counsel pursuant to Mississippi Code Annotated section 73-3-207 (Rev. 2012).  Brantley Pierce and Kyle Handy assisted in the preparation of Thomas's brief, and Haley Wright and Paul Pritchard presented oral argument.

court 'enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, this Court will not reverse the ruling." *Id.* (quoting *Ferguson*, 137 So. 3d at 245 (¶17)).

¶11. The trial court did not abuse its discretion by allowing Officer Moulds to testify about his prior conversation with the CI. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). As we have explained, "there are some circumstances where an officer can testify at trial about information provided to him by informants. Those situations include statements explaining actions taken by an officer." *Stubbs v. State*, 878 So. 2d 130, 134 (¶10) (Miss. Ct. App. 2004). Thus, in *Stubbs*, we held that the trial judge did not err when he allowed a narcotics agent "to testify that [a CI] stated contraband could be purchased from [the defendant], for the statement was not introduced for the purpose of proving the truth of the matter asserted but to explain how [the defendant] came under investigation by the [narcotics task force]." *Id.* at 135 (¶10); *accord Thompson v. State*, 33 So. 3d 542, 547 (¶18) (Miss. Ct. App. 2010); *Singleton v. State*, 948 So. 2d 465, 470 (¶9) (Miss. Ct. App. 2007); *Tate v. State*, 819 So. 2d 555, 558 (¶¶12-14) (Miss. Ct. App. 2002). Likewise in this case, Officer Moulds's testimony was admissible to explain why he and Agent Lewis met with the CI, searched her vehicle, and gave her cash and a video camera. Accordingly, it was admissible for a purpose other than for the truth of the matter asserted. It was non-hearsay.

¶12. Moreover, even if Officer Moulds's testimony was hearsay, its admission was harmless. A primary purpose of the hearsay rule is to protect the opposing party's right to cross-examine the declarant. Here, the CI testified and was the key witness at trial. She testified under oath that she spoke to Thomas and arranged the buy. She was subject to cross-examination, and the jury was able to observe her demeanor and judge her credibility. Accordingly, Officer Moulds's testimony to the same effect was harmless—even if it was hearsay, which, for the reasons previously explained, it was not.

## II. Agent Lewis's Description of the Video

¶13. Thomas next argues that the trial judge erred by allowing Agent Lewis to describe to the jury his interpretation of the events depicted on the video. Yet Thomas did not object on a prior occasion when Officer Moulds answered essentially the same questions, nor did he object the first time that Agent Lewis was asked and answered the question. Officer Moulds testified first and summarized for the jury his interpretation of what the video depicted—"a very quick exchange" in which Thomas took cash from the CI's hand and appeared to place something in her other hand. Officer Moulds also testified that he confirmed that Thomas was the man on the video by comparing it to photographs of Thomas. Thomas did not object to this testimony. In fact, Thomas's attorney raised the issue again in his first question to Officer Moulds on cross-examination, asking, "I want to make sure it's clear for the jury. It's your sworn testimony that you can see a hand-to-hand transaction on this video?" Agent Lewis testified later, without objection, that he had no doubt that the man on the video was

7

Thomas. He also was asked and answered the following question, again without objection: "Now, at the critical time [of the video], . . . what can you see?" In response, much like Officer Moulds, Agent Lewis offered the jury his interpretation of the video—i.e., that it depicted Thomas taking money from the CI's hand. Thomas finally objected only when the prosecutor asked Agent Lewis to reiterate the same testimony. Over objection, Agent Lewis was allowed to answer "yes" to the prosecutor's question whether he could see any exchange of money and identify Thomas from the video.

¶14. In another case in which the defendant objected to an officer's narration of a surveillance video, the Mississippi Supreme Court held that "any argument to exclude the testimony prior to the [defendant's] objection is procedurally barred." *Gales v. State*, 153 So. 3d 632, 647 (¶49) (Miss. 2014). This simple principle disposes of any claim that Thomas was prejudiced by the trial judge's overruling of his belated objection. By the time Thomas objected, both Officer Moulds and Agent Lewis had testified clearly, without objection, that the man on the video was Thomas and that an exchange of cash could be seen. Lewis's final confirmation of this testimony was merely redundant and harmless, even if it was error. *See id.*[3]

---

[3] The agents' testimony would have been subject to a proper objection. Applying Mississippi Rule of Evidence 701, our Supreme Court has held that a lay "witness should not tell the jury what they can clearly see for themselves on [a surveillance video] . . . . It naturally follows that if the jury can clearly see for themselves *and if the witness is in no greater position to relate what is depicted by personal observation of the events*, then his opinion is not one which is helpful to the trier of fact." *Wells v. State*, 604 So. 2d 271, 279 (Miss. 1992). As applied to this case, the jury was able to decide for itself what the video

### III. Cautionary Instruction

¶15. Thomas next argues that the trial judge erred by refusing to instruct the jury that the CI's testimony should be "received with caution." "Jury instructions are generally within the discretion of the circuit court; therefore, this Court reviews the circuit court's denial of a jury instruction under the abuse-of-discretion standard." *Wallace v. State*, 139 So. 3d 75, 77 (¶7) (Miss. Ct. App. 2013). "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole." *Rubenstein v. State*, 941 So. 2d 735, 784-85 (¶224) (Miss. 2006) (quoting *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997)). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001).

¶16. Our Supreme Court and this Court have considered and rejected similar arguments previously. In a series of cases, both Courts have held that it is not an abuse of discretion to refuse such an instruction where the CI's arrangement with the prosecution is disclosed to

---

depicted, so Agent Lewis's and Officer Moulds's opinions regarding the same were not helpful. However, as discussed in the text, Officer Moulds and Agent Lewis offered those opinions in full without objection, and Thomas was not prejudiced by the fact that Agent Lewis confirmed their shared opinion one final time. There is also a question whether Thomas belatedly objected on the proper ground. In *Gales*, the Supreme Court held that the proper objection to such testimony is under Rule 701, and that the issue is waived where the defendant instead objects based on the "best evidence rule." *Gales*, 153 So. 3d at 645 (¶¶43-44). Here, Thomas's counsel objected that "[t]he best evidence is the video, which the jury will be able to see and draw their own conclusions." Even assuming this belated objection was properly framed, we still find that any error in overruling it was harmless.

9

the jury, and the CI is subject to cross-examination on the subject. *See Corrothers v. State*, 148 So. 3d 278, 302-03 (¶55) (Miss. 2014); *Webber v. State*, 108 So. 3d 930, 931-32 (¶7) (Miss. 2013); *Harris v. State*, 144 So. 3d 199, 203 (¶¶16-17) (Miss. Ct. App. 2014); *Wallace*, 139 So. 3d at 77-78 (¶¶8-9). Here, Officer Moulds and the CI acknowledged that the CI had been arrested for selling a small amount of cocaine and offered an opportunity to "work off" the charge—i.e., avoid prosecution—in exchange for buying cocaine and helping to arrest more significant dealers. Moulds and the CI also admitted that she had never been indicted and had avoided prosecution for her crime. And although there was some disagreement about how many buys the CI made, the CI was thoroughly cross-examined about her arrangement with Moulds and her possible motive to lie or fabricate evidence. Therefore, under the above-cited precedent, the trial judge did not abuse his discretion by denying Thomas's request for a cautionary instruction.

## IV. Weight and Sufficiency of the Evidence

¶17. Finally, Thomas challenges the weight and sufficiency of the evidence against him and the trial court's denial of his motion for a directed verdict and motion for judgment notwithstanding the verdict (JNOV) or a new trial.[4] The standards of review applicable to

---

[4] "A motion for a directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature." *Sheffield v. State*, 749 So. 2d 123, 126 (¶10) (Miss. 1999) (quoting *Banks v. State*, 394 So. 2d 875, 877 (Miss. 1981)). Here, Thomas's oral directed verdict motion was as follows: "Judge, at this time, we would make a motion for a directed verdict as a matter of law. That's for the record." Under *Sheffield*, that is not sufficient to preserve a challenge to the

such challenges are well-settled:

> [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for [JNOV], the critical inquiry is whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

*Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). The relevant question is not whether this Court "believes that the evidence at the trial established guilt beyond a reasonable doubt" but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have [so] found." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶18.    "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18). We weigh the evidence presented at trial "in the light most favorable to the verdict." *Id.*

¶19.    Thomas's basic contention is that the CI was untrustworthy because her arrest and

---

sufficiency of the evidence. *See id.* Thomas's post-trial motion for JNOV or a new trial was even less specific. Although the motion requested "a judgment of acquittal notwithstanding the verdict," the motion failed to address the weight or sufficiency of the evidence. This was also insufficient to preserve a challenge to the weight or sufficiency of the evidence because the same "specificity" required of a motion for a directed verdict "is also required in a motion for JNOV." *Riley v. State*, 11 So. 3d 751, 753 (¶10) (Miss. Ct. App. 2008). Procedural bars notwithstanding, we will address Thomas's arguments on the merits.

11

potential prosecution for selling cocaine gave her a motive to lie. He argues Officer Moulds and Agent Lewis did not take sufficient precautions to ensure that the CI did not fabricate evidence against him—for example, he argues that a female officer should have been present to conduct a pre-buy strip search of the CI and that the agents should have surveilled the buy location. However, Thomas cites no authority for the proposition that such measures are essential in all cases or that a conviction must be set aside in their absence.

¶20. Moreover, the CI testified unequivocally that on the day in question she bought cocaine from Thomas, whom she knew well. The Mississippi Supreme "Court consistently has stood by the precept that the credibility of a witness"—even a CI—"is solely for the jury to weigh and consider." *Miller v. State*, 983 So. 2d 1051, 1054 (¶14) (Miss. 2008) (collecting cases). The jury was entitled to consider the CI's motives, but it was also entitled to find her credible. *Id.* at 1054-55 (¶15). Moreover, the video of the exchange in this case, imperfect though it may be, corroborates the CI's testimony. It appears to show an exchange of cash, and the CI returned to Officer Moulds and Agent Lewis a short time later with $50 worth of cocaine. *See id.* at 1054 (¶¶12-13) (finding that the CI's testimony was corroborated by a video that "did not depict an actual exchange of money" but "did show [the defendant] place something into the CI's hand" and by "the fact that the CI returned to the meeting location with cocaine and without state funds"); *Wallace*, 139 So. 3d at 78 (¶12) (finding the CI's testimony to be corroborated by video of a brief meeting between the CI and the defendant, "although no mention was made of a drug transaction and no actual exchange of drugs and

12

money was seen or heard on the recordings," and by the fact that the CI returned from the meeting with drugs but not cash). Indeed, Thomas's attorney acknowledged in his opening statement that the case would turn primarily, if not entirely, on whether the jury believed that Thomas was the man in the video.[5]

¶21. Even the uncorroborated testimony of an accomplice is sufficient evidence to sustain a conviction unless such "testimony is unreasonable, self-contradictory, or substantially impeached." *King v. State*, 47 So. 3d 658, 664 (¶14) (Miss. 2010). Here, for the reasons explained above, the CI's testimony was not wholly uncorroborated—it was consistent with and supported by the video and the cocaine. Nor, in any event, was the CI's testimony unreasonable, contradictory, or substantially impeached. Her testimony straightforwardly described a drug buy, and Thomas simply argues that we must disbelieve it because of the CI's motive to lie. That was an issue "solely for the jury to weigh and consider." *Miller*, 983 So. 2d at 1054 (¶14). There was sufficient evidence for a rational juror to have found Thomas guilty beyond a reasonable doubt. In addition, considering the evidence in the light most favorable to the verdict, the verdict is not contrary to the overwhelming weight of evidence. *Bush*, 895 So. 2d at 843-44 (¶¶16, 18). Accordingly, the trial judge did not err in denying Thomas's motion for a directed verdict, JNOV, or a new trial.

---

[5] Counsel's opening statement was as follows: "I don't have anything much to add to what [the assistant district attorney] said. There is a video. The transaction is captured on that video. If it's [Thomas], then I think it's a clear-cut case. If it's not, it's clear-cut not guilty. So we'll get the video, let y'all look at it and figure out what the truth is."

**CONCLUSION**

¶22.    Thomas has identified no reversible error committed during the course of his trial, and there is sufficient evidence to sustain his conviction. Accordingly, we affirm.

¶23.    **THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE AND SENTENCE AS A SUBSEQUENT DRUG OFFENDER AND HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.**

　　　　**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**