ROBERTS, J.,
for the Court:
¶ 1. Following a jury trial in the DeSoto County Circuit Court, Sam Wallace was convicted of one count of selling cocaine to a confidential informant. Due to his status as a habitual offender, Wallace was sentenced to serve life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Wallace’s post-trial motions were denied. Subsequently, he filed the current appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 14, 2010, a DeSoto County grand jury indicted Wallace on one count of selling cocaine in violation of Mississippi Code Annotated section 41-29-139(a)(1) (Supp.2012). Wallace’s indictment was later amended to reflect his habitual offender status pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007). Wallace’s jury trial began on December 12, 2011, and ended the following day, with the jury finding Wallace guilty of the charge in his indictment. Wallace’s sentencing hearing took place on January 3, 2012, and the circuit court sentenced Wallace, as a habitual offender, to life imprisonment in the custody of the MDOC.
¶ 3. At trial, the State presented the testimony of Southaven Police Department Sergeant Tim Wood. Sergeant Wood testified that on August 27, 2009, a confidential informant (Cl) contacted the police department with information that the Cl could buy cocaine from a man named “Sam.” This man was later identified as Sam Wallace, the defendant. The Cl came to the police department, where he was searched, given $100 to use as payment for the drugs, and outfitted with audio and video surveillance equipment. A police officer, using an undercover vehicle, drove the Cl to meet Wallace. Sergeant Wood also testified that once the Cl was dropped off at the location, three officers conducted physical surveillance of the Cl. Following the exchange, the Cl returned to the undercover vehicle and delivered a substance. Rob Reid, a forensic scientist at the Mississippi Crime Laboratory, testified at trial about the substance submitted to him from the transaction for testing. He identified it as .9 grams of cocaine.
¶ 4. In addition to Sergeant Wood’s testimony, the State also presented the testimony of the Cl. The Cl testified that he agreed to help because he had been charged with possession of marijuana and had hoped to get help in reducing or eliminating his charge. The Cl explained that *77 he knew Wallace through a friend who bought drugs from him on another occasion. The Cl testified that he called Wallace to buy cocaine from him, and they were to meet at a gas station near the Stateline Road and Highway 51 intersection. After waiting for awhile, the Cl met Wallace inside the gas station to complete the transaction. The Cl testified that he gave Wallace $100 in exchange for cocaine. The Cl stated that he then turned over the cocaine to the police officers. Next, Lieutenant Jordan Jones testified for the State. Lieutenant Jones stated that there was not live video feed of the transaction, but that there was live audio feed as it was happening. Lieutenant Jones also testified that he dropped the Cl off at the site with $100, and when he picked him back up, the Cl no longer had $100 and did have cocaine.
¶ 5. Following the State’s case-in-chief, Wallace moved for a directed verdict, and the circuit court denied the motion. Wallace recalled Sergeant Wood, the Cl, and Lieutenant Jones to the stand. Lastly, Wallace called Jamie Wallace, his brother, to testify. Jamie testified that he accompanied Wallace to meet the Cl and that they were meeting the Cl to pick him up and take him somewhere. He further testified that he sat in the car, but he saw Sam go into the gas station and then the Cl go into the gas station. He stated that the Cl left the gas station and did not get a ride from them.
¶ 6. The jury returned a verdict finding Wallace guilty of one count of selling cocaine. The circuit court sentenced Wallace as a habitual offender to life in the custody of the MDOC. Wallace filed a motion for a new trial and a motion for a judgment notwithstanding the verdict (JNOV)- The circuit court denied the motions, and Wallace executed the present appeal. On appeal, he presents two arguments for review:
I. The [circuit] court erred in refusing jury instruction D-l, a cautionary instruction on the [CI]’s testimony[.]
II. The [circuit] court erred in denying Wallace’s motion for a new trial or for JNOV, as the jury’s verdict is against the overwhelming weight of the evidence.
ANALYSIS
I. JURY INSTRUCTION
¶ 7. In his first issue, Wallace argues that the circuit court erred in refusing a jury instruction cautioning the jury to consider the Cl’s testimony for potential bias when weighing his testimony. Jury instructions are generally within the discretion of the circuit court; therefore, this Court reviews the circuit court’s denial of a jury instruction under the abuse-of-discretion standard. Newell v. State, 49 So.3d 66, 73-74 (¶ 20) (Miss.2010) (citing Davis v. State, 18 So.3d 842, 847 (¶ 15) (Miss.2009)). Further, “[i]n determining whether error lies in the, granting or refusal of various instructions, the [jury] instructions actually given must be read as a whole.” Id. (quoting Rubenstein v. State, 941 So.2d 735, 784-85 (¶224) (Miss.2006)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. at 73.
¶ 8. We find that the circuit court did not abuse its discretion when denying Wallace’s jury instruction. In Webber v. State, 108 So.3d 930, 931-32 (¶ 7) (Miss.2013), the Mississippi Supreme Court recently held that the circuit court did not abuse its discretion in denying Freddie Webber’s proposed cautionary instruction about the Cl’s testimony. The supreme court found it was sufficient that the Cl’s pay arrangement was disclosed to the jury, *78 and that the Cl was subject to cross-examination on the issue. Id.See also White v. State, 722 So.2d 1242, 1247-48 (¶¶ 30-35) (Miss.1998); Williams v. State, 463 So.2d 1064, 1069 (Miss.1985). “The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity.” Ford v. State, 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999) (internal citations omitted). Thus, if the Cl relationship is properly disclosed to the jury, the failure to give a cautionary instruction will not be deemed an abuse of discretion.
¶ 9. In the present case, the Cl was thoroughly questioned by the State and Wallace as to what incentives he had in acting as a Cl. The Cl explained that he had pending charges for possession of marijuana, and that he had been informed that he could possibly receive assistance from the police department with those charges if he acted as a Cl. Additionally, other police office officials described the arrangements often made with CIs, including the details of the arrangement with this Cl about his pending charges. With this knowledge of the Cl’s arrangement with the police department, it was this jury’s duty to weigh his testimony for his sincerity and credibility. Further, the Cl’s testimony was corroborated by the testimony of other police officers who provided physical surveillance the day of the drug purchase. Prior to meeting Wallace, the Cl was searched and given a $100 bill with which to buy cocaine from Wallace. Upon being picked up after the transaction, the Cl no longer had the $100 bill and had several rocks of cocaine. This supports his testimony that he purchased the cocaine from Wallace.
¶ 10. Therefore, we find this issue to be without merit.
II. WEIGHT OF THE EVIDENCE
¶ 11. Wallace next argues that his conviction was against the overwhelming weight of the evidence. When this Court considers a challenge to the weight of the evidence, the verdict, viewed in the light most favorable to it, will only be disturbed “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005).
¶ 12. We disagree that Wallace’s conviction was against the weight of the evidence. As discussed above, the Cl testified that he purchased cocaine from Wallace. This was corroborated by police officers’ testimonies. There was audio and video recordings of the transaction, and although no mention was made of a drug transaction and no actual exchange of drugs and money was seen or heard on the recordings, there is no doubt that the Cl and Wallace met briefly at the gas station. There is also no doubt that after they met, the Cl had an amount of cocaine he did not have before the meeting. He also did not have the $100 given to him by the police department to buy the drugs. While Wallace attempted to argue at trial that the Cl had planned to have someone drop cocaine rocks on the ground for him to pick up and then dispose of the $100 in an effort to set up Wallace, it was for the jury to determine any conflicting evidence and determine whose testimony to believe. A reasonable jury could have found that a transaction did occur, even though no explicit mention of drugs was made on the audio tape and no actual exchange was seen on the video tape.
*79 ¶ IB. We find that this issue is without merit as the verdict is not against the overwhelming weight of the evidence.
¶ 14. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF ONE COUNT OF SELLING COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.