# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01766-COA

**ROOSEVELT PHILLIPS, JR.**                                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

DATE OF JUDGMENT:              11/16/2018
TRIAL JUDGE:                   HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:     COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        RICHARD B. LEWIS
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:             BRENDA FAY MITCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 04/28/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

> **EN BANC.**

> **CARLTON, P.J., FOR THE COURT:**

¶1.     Roosevelt Phillips Jr. was convicted of armed robbery and aggravated assault. The Coahoma County Circuit Court sentenced Phillips to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) for the armed robbery conviction and five years in the custody of the MDOC, with five years of post-release supervision, for the aggravated assault conviction. The trial court ordered the sentence for aggravated assault to run consecutively to the sentence for armed robbery.

¶2.     After the denial of his posttrial motions, Phillips appealed his convictions and sentences. On appeal, Phillips argues that the trial court erred by failing to grant Phillips's

motion in limine to exclude the victim's in-court identification of Phillips. Phillips also attacks the evidence as legally insufficient and the verdict as being against the overwhelming weight of the evidence.

¶3.     After our review, we find no error. We therefore affirm Phillips's convictions and sentences.

**FACTS**

¶4.     On the evening of April 23, 2015, Suzette Chambers was robbed at gunpoint in the driveway of her home. Chambers testified that a man jumped upon her quickly and demanded that she give him her purse. Chambers testified that her attacker was wearing a mask that covered all of his face except for his eyes and eyebrows. Chambers testified that her attacker pointed a gun in her face and stole her purse, which contained her wallet, credit cards, debit card, cell phone, and iPad. As a result of the assault, Chambers suffered a fractured arm.

¶5.     During the course of investigating the robbery, Investigator Charles Sledge of the Clarksdale Police Department obtained video footage showing Phillips using Chambers's debit card at several store locations in Clarksdale. As a result of the investigation, Phillips was arrested and then indicted for armed robbery, credit card fraud (less than $100), attempted credit card fraud (less than $100), and aggravated assault.

¶6.     A trial was held on November 13 and November 14, 2017. At trial, Chambers testified that she could not identify her attacker because he was wearing a mask and she could only see his eyes. After the trial, the jury found Phillips guilty of one count of credit

2

card fraud (less than $100) and one count of attempted credit card fraud (less than $100). The trial court sentenced Phillips to serve eleven months and twenty-nine days in the Coahoma County Jail for each of these convictions with the sentences set to run consecutively. However, the jury was unable to reach a decision on the charges of armed robbery and aggravated assault; as a result, those charges were ordered to be placed back on the docket for trial.

¶7. Phillips was re-tried for armed robbery and aggravated assault on November 13-16, 2018. Approximately one month before the trial, the State informed defense counsel that Chambers intended to identify Phillips as her attacker at the second trial. The State explained that after Chambers stepped down from the witness stand and left the courtroom, she informed the District Attorney's office and members of the Clarksdale Police Department that upon seeing Phillips's eyes and eyebrow area, Chambers was certain that he was the one who had assaulted her and robbed her at gun point. Defense counsel made an oral motion in limine requesting that the trial court exclude Chambers's in-court identification of Phillips from the second trial. After hearing arguments, the trial court denied Phillips's motion in limine, ruling that Chambers's testimony constituted a prior inconsistent statement and would be subject to cross-examination by Phillips.

¶8. After the trial, the jury found Phillips guilty of both charges. The trial court sentenced Phillips to serve twenty years in the custody of the MDOC for the armed robbery charge and five years in the custody of the MDOC for the aggravated assault charge, with five years of post-release supervision. The trial court ordered the sentences to run consecutively, for a

total of twenty-five years to serve in the custody of the MDOC.

¶9. Phillips filed a motion for judgment notwithstanding the verdict and a motion for a new trial, which the trial court denied. Phillips timely filed his notice of appeal.

## DISCUSSION

### I. In-Court Identification

¶10. Phillips argues that the trial court erred in failing to grant his motion in limine to exclude Chambers's in-court identification of Phillips as her attacker. Phillips asserts that Chambers's in-court identification was made under circumstances so unnecessarily suggestive and conducive of misidentification that it gave rise to the "irreparable" misidentification of Phillips at trial as being the perpetrator of the crimes charged in the indictment. Phillips maintains that under such circumstances, Chambers's in-court identification of him violates his due process rights. Phillips asserts that because the in-court identification was unduly suggestive, the trial court erred by failing to perform the constitutional analysis set forth in *Neil v. Biggers*, 409 U.S. 188, 198 (1972), prior to admitting Chambers's identification of Phillips.

¶11. Phillips also argues that the trial court erred in allowing the State to elicit testimony from Chambers regarding her out-of-court identification of Phillips from the first trial. Phillips states that as a result, the jury was allowed to hear how Chambers was now able to make a positive in-court identification of Phillips on direct examination at his second trial. Phillips argues that this testimony was a highly suggestive out-of-court pretrial identification and was introduced for no other purpose than to bolster Chambers's in-court identification

4

and explain her previous testimony concerning her inability to identify Phillips at the first trial.

¶12. Phillips maintains that prior to Chambers's testimony, the State informed defense counsel and the trial court that "we're just bringing in the in-court identification, nothing else as it relates to when [Chambers] initially identified [Phillips]." Phillips asserts that after defense counsel cross-examined Chambers concerning her testimony during the first trial about whether she could identify her attacker, the State, on redirect, improperly questioned Chambers regarding the circumstances of when she identified Phillips.

¶13. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Wells v. State*, 233 So. 3d 279, 284 (¶8) (Miss. 2017). "Motions in limine should be granted only in situations where 'the material or evidence in question will be inadmissible at a trial under the rules of evidence' and the 'mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.'" *Id*. (quoting *Evans v. State*, 25 So. 3d 1054, 1057 (¶6) (Miss. 2010)).

¶14. Additionally, the Mississippi Supreme Court has established that an appellate court will not disturb a trial court's findings regarding the admissibility of an in-court identification "unless there is an absence of substantial credible evidence supporting it." *Butler v. State*, 102 So. 3d 260, 264 (¶8) (Miss. 2012) (internal quotation mark omitted). "[T]he general rule is that an in-court identification is not subject to suppression or objection unless it is shown to have been tainted by some suggestive out-of-court identification." *McCoy v. State*, 147 So. 3d 333, 350 (¶45) (Miss. 2014). In the present case, Phillips challenges Chambers's in-

court identification of him as being tainted by a suggestive out-of-court identification: her observation of him as the defendant during the first trial. In such cases, "the trial court would evaluate the factors announced in [*Biggers*] in order to determine whether the in-court identification testimony appears sufficiently reliable to overcome the taint of a prior improperly obtained identification." *Id*. at (¶44). We recognize that "an accused who seeks to exclude identification testimony based upon an alleged due process violation faces a very heavy burden. Even though the pretrial identification is impermissibly suggestive, he must still show the conduct gave rise to a very substantial likelihood of irreparable misidentification." *Whitlock v. State*, 47 So. 3d 668, 673 (¶15) (Miss. 2010) (quoting *York v. State*, 413 So. 2d 1372, 1384 (Miss. 1982)).

¶15. In *Biggers*, 409 U.S. at 198, the United States Supreme Court held that "[i]t is the likelihood of misidentification which violates a defendant's right to due process." The Mississippi Supreme Court explained that misidentification of a defendant "could come about in two different evidentiary situations: (1) an in-court identification based upon a suggestive pretrial identification procedure, and (2) testimony pertaining to the out-of-court suggestive identification proceeding itself." *Galloway v. State*, 122 So. 3d 614, 663 (¶161) (Miss. 2013) (quoting *York*, 413 So. 2d at 1381). The supreme court therefore held that "in order to satisfy due process, pretrial identifications resulting from a suggestive process must be examined under the totality of the circumstances in order to determine the identification's reliability." *Id*. (citing *Biggers*, 409 U.S. at 199-200). In so doing, a trial court must engage in "a two-step inquiry for allegations of an impermissible identification: (1) the court must

first determine whether the identification was unduly suggestive; if that inquiry is answered affirmatively, then (2) the court must determine whether, under the totality of the circumstances and using the five *Biggers* factors, the identification was nevertheless reliable." *Id*. In *Biggers*, the Supreme Court set forth the following five factors "to be considered in evaluating the likelihood of misidentification": "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

¶16. The record before us reflects that at Phillips's first trial, Chambers testified that her attacker "jumped up on [her] so fast." When asked if she was able to identify her attacker, Chambers answered "No. I was not able to identify him, because he had a mask on." Chambers explained, "All I could see was the eyes, because he had a mask on. So all I could see was the eyes."

¶17. Prior to Phillips's second trial for the charges of armed robbery and aggravated assault, defense counsel made an oral motion in limine asking the trial court to exclude Chambers's in-court identification of Phillips as her attacker. The State informed the trial court that during the first trial, Chambers stated that she could not identify her attacker because he was wearing a mask and she could only see his eyes. However, the State explained that after Chambers stepped down from the witness stand and left the courtroom, she informed the District Attorney's office and members of the Clarksdale Police Department

7

that upon seeing Phillips's eyes and eyebrow area, Chambers was certain that he was the one who had assaulted her and robbed her at gun point. The State explained that Chambers was sure about Phillips's identification because Chambers had suffered many nightmares reliving the attack. The State argued that if Chambers was able to identify Phillips as her attacker, the jury should be able to determine the weight of her testimony. The State asserted that such in-court identifications are only subject to suppression if it has been determined that the identification has been tainted or was suggestive in any manner. The State also maintained that it never presented Chambers with a photo line-up of suspects.

¶18. The trial court denied Phillips's motion in limine, explaining that the in-court identification by Chambers would constitute a prior inconsistent statement and that the jury would be instructed accordingly. The trial court stated that defense counsel would then be allowed to bring up Chambers's prior testimony stating that she could not identify her attacker because he was wearing a mask.

¶19. At trial, defense counsel renewed the motion in limine prior to Chambers's testimony. The trial court again ruled that Chambers's testimony constituted "a prior inconsistent statement" and stated that the jury would receive an instruction to that effect.

¶20. During Chambers's testimony at the second trial, she stated that her attacker ordered her to give him her purse. Chambers testified that as he spoke to her, "he was looking me dead in the eyes, and I was looking at his eyes." Chambers testified that although her attacker's face was not visible because he was wearing a mask, his eyes and eyebrows were visible. Chambers testified that she could see his eyes and eyebrows "real good, because he

8

was close upon me with the gun pointed in my face." Chambers became emotional as she testified to the following: "I saw those eyes for nights and nights and nights. I couldn't go to sleep because of those eyes. For months that went on; I could see those eyes. For months I saw nothing but those eyes looking at me."

¶21. The State asked Chambers if she was able to identify her perpetrator on the night of the incident. Chambers responded, "No, I was not able to identify anyone, but I did tell them that it was a kind of medium built, tall, young man. And that was about it, because I didn't really know who it was." The State then asked, "[S]itting here today, are you able to identify the individual that placed a gun in front of your face, asked for your purse, and dragged you until you [released] your purse in the courtroom today?" Chambers answered, "Those eyes. I can never forget those eyes. . . . I can never forget those eyes of this man sitting—I could never forget those eyes, because he had those devious looking eyes and those thick eyebrows. I could never forget those eyes looking at me." Chambers then identified Phillips as the man whose eyes and eyebrows she described.

¶22. During cross-examination, the following exchange occurred between defense counsel and Chambers:

[Defense counsel]: Yes, ma'am. Now do you recall being where you are now about a year ago? And that individual was sitting where he's sitting a year ago. Now, am I correct that that day you did not identify him as the person who assaulted you?

Chambers: Because I did not look at him.

[State]: Your Honor, I'm going to—

9

Chambers:     Because I did not look at him at that time.  I looked at him afterwards.  And I started crying in this courtroom, and the attorneys had to take me out because I recognized those eyes then.  I saw those eyes.  I saw them. . . .

[Defense counsel]:  As—today when you pointed and said [t]hat's him, you did not do that last time we were here—

Chambers:     I did not look at him while I was testifying.  I never looked at him.  I never looked at him.

[Defense counsel]:  And I believe in your testimony that you were not able to identify him because he had on a mask.  Do you remember that?

Chambers:     Yes.

¶23.  On redirect, the following exchange occurred between the State and Chambers:

[State]:      Ms. Chambers, I know this is tough for you, but just to reiterate, when did you recognize the eyes of the defendant?

Chambers:     When we were in here last time in the courtroom.

[State]:      Was it during the time that you were on the stand?

Chambers:     No, because I never looked at him then.

[State]:      And were you asked during that time if you could identify him?

Chambers:     I don't know if I was even asked that.  I don't recall being asked that.

[State]:      So you stated it was not when you were on the stand.

Chambers:     No.

[State]:      Was it when you were coming in or when you were leaving when you noticed—

Chambers:     It was when I was leaving that I noticed.

10

> [State]:      And at that time, was your testimony over?
>
> Chambers:   I don't think my testimony—it was when we—we had a recess or something, and I was sitting there and I was able to see it.

¶24.   On appeal, Phillips states that this Court must determine whether the identification procedure at issues constitutes (1) a mere in-court identification with no pretrial suggestive identification procedure or (2) an out-of-court identification with a subsequent in-court identification of Phillips, thereby triggering the due process inquiry to be made by the trial court in order to determine the reliability of the pretrial identification. Phillips argues that the trial court should have treated the issue as one where the in-court identification was based on a highly suggestive pretrial out-of-court identification procedure that tainted the in-court identification and then performed the constitutional analysis set forth in *Biggers*. Phillips asserts that the trial court erred by instead treating this situation like one where a prior inconsistent statement was made by a victim.

¶25.   The State maintains that Phillips's argument on appeal is procedurally barred because Phillips failed to argue before the trial court that Chambers's identification of Phillips was based on an impermissibly suggestive pretrial identification procedure and should therefore be excluded under *Biggers*. The State asserts that Phillips's counsel actually argued that Chambers's identification was "unreliable" because Chambers "changed her mind" about whether she could identify her attacker.

¶26.   In response, Phillips submits that prior to Chambers's actual testimony in court, defense counsel had no idea whether she would definitely identify Phillips as her assailant and how she was now able to do so since she had previously testified that she could not

11

identify her attacker. Phillips maintains that there was no way his counsel could make such a "specific" objection without even knowing what Chambers was now going to testify to or how she was now able to do so. Phillips states that regardless, during the hearing on the motion in limine, the State asserted that in-court identifications "are only subject to suppression from prior case law, if it had been determined that it has been tainted or suggestive in any manner." Phillips maintains that this statement specifically brought up the fact that the in-court identification could be suppressed only if it were determined by the trial court that it was because of a "highly prejudicial, tainted and suggestive" pretrial identification procedure. Phillips argues that the trial court was therefore made aware that the issue before it was whether the trial court should allow Chambers to give an in-court identification based on the rule of law set out in the *Biggers* two-step inquiry.

¶27. In *Galloway*, 122 So. 3d at 662 (¶157), the appellant argued that an eyewitness's in-court identification of Galloway as the perpetrator of the charged crime was unreliable, suggestive, and highly prejudicial. At trial, the eyewitness identified Galloway in court as the perpetrator. *Id*. at 663 (¶158). However, prior to trial, that same eyewitness made an inconclusive photo identification of the perpetrator and described the perpetrator as having gold teeth, even though Galloway did not have gold teeth. *Id*. at 662 (¶157). Defense counsel failed to object to the eyewitness's in-court identification during trial; accordingly, on appeal, the supreme court reviewed the issue for plain error.[1] *Id*. at 663 (¶159).

---

[1] The supreme court observed that Galloway specifically failed to make an assertion at or before trial that the witness's "out-of-court identification was either improper or unnecessarily suggestive." *Id*. at 663 (¶160).

¶28. In its analysis, the *Galloway* court discussed the United States Supreme Court's holding in *Biggers* and recognized that the Mississippi Supreme Court "ha[d] not decided whether *Biggers* applies to an in-court identification not preceded by an impermissibly suggestive pretrial identification." *Id*. at (¶162). The *Galloway* court determined that in the case before it, no impermissibly suggestive pretrial identification was alleged to have preceded the eyewitness's in-court identification of Galloway and therefore found "no reason to expand the *Biggers* two-step inquiry" to apply to such a situation. *Id*. at (¶164). The *Galloway* court ultimately determined that "[t]he extent to which there were inconsistencies between [the eyewitness's] pretrial identification and her subsequent in-court identification goes to the weight of the evidence, not to its admissibility." *Id*. at (¶165). The supreme court further explained that "[t]he trial itself affords the defendant adequate protection from the general inherent suggestiveness present at any trial. The defendant receives the full benefit of a trial by jury, presided over by an impartial judge, with representation by counsel, and witnesses subject to oath and cross-examination." *Id*. at (¶164).

¶29. In *McCoy*, 147 So. 3d at 350 (¶45), the supreme court addressed whether a defendant's in-court identification was so suggestive as to violate due process of law. The supreme court explained that "no one [in this case] made a pretrial identification of [the defendant,] McCoy[,] as a perpetrator of the robbery." *Id*. at (¶46). Rather, a witness identified McCoy at trial as one of the robbers. *Id*. The supreme court held that

> the question in this type of case is "whether familiar standards of due process permit a conviction where the only identification ever made suffers from the suggestiveness of being directed at an individual who the witness knows has been arrested, indicted and brought to trial on the charge in question."

13

*Id*. at (¶45) (quoting *Gayten v. State*, 595 So. 2d 409, 418 (Miss. 1992)). The supreme court discussed its prior decision in *Gayten*, where, like the facts of *McCoy*, "the only identification of the defendant was made during trial by a witness." *Id*. The *Gayten* court "recognized that the defendant, represented by counsel, made no attempts to avoid a suggestive identification forum. He did not request that others be seated at the counsel table with him or that he be seated at some place other than the counsel table before the witness was brought into the courtroom and asked to identify him." *Id*. (internal quotation marks omitted). "Because the defendant [in *Gayten*] did not attempt to avoid the issue of a suggestive in-court identification, this Court found that he could not then claim a due-process violation resulting from the identification." *Id*. (citing *Gayten*, 595 So. 2d at 418). The *Gayten* court ultimately "held that the evidence was sufficient for a fair-minded jury to believe the witness's identification testimony." *Id*.

¶30. In the case before it, the *McCoy* court observed that like the defendant in *Gayten*, "McCoy, who sat at the counsel table with his attorney, took no steps to avoid a suggestive in-court identification." *Id*. at (¶46). The supreme court accordingly held that "McCoy cannot now complain that his due-process rights were violated by [the witness's] identification testimony." *Id*. The *McCoy* court ultimately held that upon reviewing "all the evidence presented at trial, including the descriptions of McCoy offered by [the witness at issue] and the other witnesses, we conclude that a fair-minded jury was entitled to find [the witness]'s in-court identification of McCoy credible." *Id*. at 351 (¶46).

¶31. Upon our review of the record and applicable precedent, we find that in the present

14

case, Chambers did not participate in a pretrial identification procedure. Phillips also concedes in his appellate brief that Chambers "never participated in any pretrial identification procedure because she never identified anyone until she finished testifying at the first trial." As stated, the Mississippi Supreme Court has declined to expand the *Biggers* two-step inquiry to an in-court identification not preceded by an impermissibly suggestive pretrial identification. *Galloway*, 122 So. 3d at 663 (¶164). Furthermore, the record reflects that Phillips was permitted to cross-examine Chambers regarding inconsistencies in her testimony from the first trial and second trial.

¶32. Additionally, the jury was instructed, per jury instruction C-115, as follows:

> The testimony of a witness may be discredited or impeached by showing that on a prior occasion they have made a statement which is inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve a matter which is material to the issues in this case.

> The use of a prior statement of a witness during questioning can be considered by you only for the purpose of determining the weight or believability that you give to testimony of the witness that made them. You may not consider the prior statement as proving the guilt or innocence of the defendant.

¶33. The jury was also instructed, per jury instruction D-2, regarding the issue of the identification of Phillips as the perpetrator of the crime, which we quote in pertinent part:

> Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the identification testimony of a witness, you should consider the following:

> 1)    Did the witness have an adequate opportunity to observe the offender?

> 2)    Did the witness observe the offender with an adequate degree of

15

attention?

3) Did the witness provide an accurate description of the offender after the crime?

4) How certain is the witness of the identification?

5) How much timed passed between the crime and the identification?

¶34. After our review, we find the trial court did not abuse its discretion in denying Phillips's motion in limine seeking to exclude Chambers's in-court identification. Furthermore, if any error occurred, it would be harmless error based on the fact that the jury's verdict in this case is supported by the overwhelming weight of the evidence.[2]

¶35. As to Phillips's claim that the State improperly elicited testimony from Chambers on redirect examination regarding her out-of-court identification of Phillips after the first trial, we find no error. Notably, Phillips did not object to Chambers's testimony during redirect or the State's line of questioning. "[T]o preserve an issue for appeal, a contemporaneous objection must be made." *Christmas v. State*, 10 So. 3d 413, 421 (¶36) (Miss. 2009). Nevertheless, our review of the transcript, which we quoted above, reflects that the defense actually elicited this testimony during the cross-examination of Chambers. The State's line of questioning during redirect was within of the scope of matters brought out during cross-examination. *See id.* at 421 (¶35) ("The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination.").

---

[2] However, we must acknowledge that in cases where a trial court must determine whether an in-court identification appears sufficiently reliable to overcome the taint of a prior improperly obtained identification, the best general practice is for a trial court to evaluate the factors set forth in *Biggers*.

16

## II.    Insufficiency of the Evidence

¶36.    Phillips argues that the trial court erred in denying his motion for a JNOV and failing to set aside the jury's verdict due to the legal insufficiency in the State's case as to the identity of the perpetrator of the crime.  Phillips focuses his argument on Chambers's testimony as to the identify of her attacker and asserts that in light of *Biggers*, the testimony is unreliable and a reasonable juror could not find Phillips guilty beyond a reasonable doubt based on Chambers's identification of Phillips.

¶37.    When reviewing a ruling on the sufficiency of the evidence, "[t]he relevant inquiry . . . is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Jackson v. State*, 263 So. 3d 1003, 1016 (¶40) (Miss. Ct. App. 2018) (internal quotation marks omitted), *cert. denied*, 263 So. 3d 665 (Miss. 2019).  This Court will accept as true "[a]ll credible evidence consistent with the defendant's guilt . . . , together with all favorable inferences that may be reasonably drawn from the evidence."  *Id*.  We recognize that "[i]f the facts and inferences point in favor of the defendant with sufficient force that reasonable persons could not have found the defendant guilty beyond a reasonable doubt, then the reviewing court must reverse and render."  *Hughes v. State*, 90 So. 3d 613, 629 (¶47) (Miss. 2012).  However, "if reasonable persons might reach different conclusions on every element of the offense, then the court will affirm."  *Id*.

¶38.    In the present case, the jury heard more than just Chambers's testimony pointing toward Phillips as her attacker.  Investigator Charles Sledge from the Clarksdale Police

Department testified that on April 23, 2015, he responded to a call that Chambers had been robbed at gunpoint. During his investigation into Chambers's stolen debit card, Investigator Sledge subpoenaed the First National Bank for the records of her credit card transactions. Investigator Sledge testified that once he received the transactions, he followed-up with the locations where her credit card had been used after the robbery and obtained video footage of those transactions. Investigator Sledge testified that Chambers's debit card had been used at a store on the same evening as the robbery. Upon viewing the surveillance video footage from that store during the time of the debit card transaction, Investigator Sledge observed a man who he identified as Phillips pumping gas into a car at the gas pump. Phillips's girlfriend later identified the car in the video as her car, and she told Investigator Sledge that she and Phillips were the only two people in control of the car. Investigator Sledge also testified that upon searching Phillips's girlfriend's car, he recovered a gun in the trunk of the vehicle.

¶39. Investigator Sledge followed-up with Phillips and questioned him about using Chambers's debit card. According to Investigator Sledge, Phillips denied using the debit card on the night of the robbery, but he admitted to using the card the next day, on April 24. Phillips denied robbing Chambers and told Investigator Sledge that he received the card "from a guy named James." The transcript reflects that the jury was able to watch the surveillance video during their deliberations.

¶40. The jury also heard testimony from Phillips. At trial, Phillips denied robbing or assaulting Chambers, and he testified that he was at home in bed on the evening of the

18

robbery. He also denied that he was the man shown on the surveillance video using Chambers's debit card. Phillips admitted to using Chambers's debit card, but he testified that he obtained the debit card from a man named James. Phillips testified that on the morning of April 24, 2015, the day after the robbery, he stopped at a gas station, and a man named James allowed him to use the debit card to get gas in exchange for Phillips paying James money. Phillips stated he pumped $71 worth of gas into his car, but he only paid James $30. Phillips testified that after he pumped the gas, he "saw an opportunity to take off with the [debit] card, so [he] just took off with it and went on to Memphis," where he attempted to use the card again, but he was unable to do so.

¶41. After viewing the evidence in the light most favorable to the prosecution, we find sufficient evidence existed to support Phillips's convictions for aggravated assault and armed robbery. We therefore find that the trial court did not err in denying Phillips's motion for a JNOV.

### III. Weight of the Evidence

¶42. Phillips also asserts that the trial court erred when it failed to grant his motion for a new trial on the grounds that the verdict was against the overwhelming weight of the evidence. Phillips again centers his argument around his claim that Chambers's in-court identification of him as her attacker was unreliable.

¶43. Here, the "motion for a new trial challenges the weight of the evidence." *Woods v. State*, 242 So. 3d 47, 59 (¶51) (Miss. 2018). The reviewing court must "weigh the evidence in the light most favorable to the verdict" and "only disturb a verdict when it is so contrary

to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017).

¶44. Based on the same evidence and testimony addressed above, we reject Phillips's argument that the trial court erred when it denied his motion for a new trial. Although Phillips claims that Chambers's in-court identification of him is impermissible and he testified that he did not assault or rob Chambers, we recognize that "[t]he jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed." *Wallace v. State*, 139 So. 3d 75, 78 (¶8) (Miss. Ct. App. 2013). The supreme court has held that "[t]he extent to which there were inconsistencies between [the eyewitness's] pretrial identification and her subsequent in-court identification goes to the weight of the evidence, not to its admissibility." *Galloway*, 122 So. 3d at 663 (¶165). Furthermore, "[f]actual disputes are properly resolved by a jury and do not mandate a new trial." *Ealey v. State*, 158 So. 3d 283, 293 (¶31) (Miss. 2015).

¶45. Taking the evidence that supports the jury's verdict as true and reviewing it in the light most favorable to the verdict, we find that allowing the verdict to stand would not sanction an "unconscionable injustice." *Little*, 233 So. 3d at 292 (¶21). We therefore affirm the trial court's judgment.

¶46. **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., AND TINDELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**