# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01138-COA

**THOMAS WILEY LOTT A/K/A THOMAS LOTT**
**A/K/A TONY LOTT**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2019 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/03/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Thomas Wiley Lott was convicted of one count of selling a controlled substance in violation of Mississippi Code Annotated section 41-29-139(b)(1)(A) (Supp. 2016) and sentenced to serve eight years in the custody of the Mississippi Department of Corrections (MDOC). Lott filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The Forrest County Circuit Court denied Lott's motion. Lott appeals. Finding no error, we affirm.

**FACTS**

¶2.     In November 2017, William Cromwell informed agents of the Twelfth Circuit Narcotics Enforcement Team (Metro Narcotics) that he could purchase methamphetamine from Lott.  It was agreed that Cromwell would serve as a confidential informant (CI) in exchange for consideration on his pending charges for possession of drugs.

¶3.     On November 15, 2017, Metro Narcotics agents met with Cromwell to discuss the plan.  Agents searched Cromwell's person and his car to ensure that he had no drugs, paraphernalia, or other evidence in his possession.  He was given $71 in marked currency for the purchase and was equipped with a camera to record audio and video of the transaction. Agents testified that the camera was unreliable and incapable of recording for over eighty minutes, so Cromwell was also given a cell phone.

¶4.     Agent Brewer followed Cromwell to Lott's house, and after confirming that Cromwell's car was parked at the house, Brewer moved to a nearby stake-out position.  Lott was not home but arrived shortly thereafter.  The two men discussed the drug sale, and Lott agreed to sell Cromwell one gram of methamphetamine for $50.  Although the surveillance equipment ultimately failed, this discussion was captured and played for the jury.  Lott was not in possession of the drugs, so they waited on someone to arrive with the methamphetamine.  When the surveillance equipment failed, Agent Brewer and a patrol deputy went to Lott's house to make sure Cromwell was safe.  The patrol deputy spoke with Cromwell but did not see any drugs.

¶5.     At trial, Cromwell was questioned about his drug offenses and first recalled only two

arrests for drugs, but he agreed with counsel that two other arrests for drugs had also occurred. Cromwell admitted that he had been arrested three times and convicted twice for burglary. He was also cross-examined about why his initial contact with a woman who opened the door to Lott's house was not on the video. Cromwell could not recall exactly what happened and agreed that the video did not show this encounter.

¶6. Cromwell testified that he did not see who brought the drugs to Lott, but he was told it was "a guy named Arm." In his written statement, which was read for the jury, Cromwell stated that "Armonzo Hilton, AKA, 'Arm' handed the meth to [Lott]." Cromwell testified that he then gave Lott five $10 bills and that Lott handed him a gram of methamphetamine. When Cromwell left Lott's house, agents followed him to the post-buy location, where he gave them the methamphetamine (which the lab revealed to be 0.80 gram) and turned over the remaining $21 as well as the equipment. At this time, Cromwell also provided a written statement.

¶7. After a jury trial, Lott was convicted of one count of selling a controlled substance in violation of Mississippi Code Annotated section 41-29-139(b)(1)(A) and sentenced to serve eight years in the custody of the MDOC. After the circuit court denied Lott's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, he appeals.

**STANDARD OF REVIEW**

¶8. "In reviewing a challenge to the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prosecution and accept all evidence supporting the verdict as true." *Dampeer v. State*, 989 So. 2d 462, 464 (¶7) (Miss. Ct. App. 2008).

"When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Anderson v. State*, 62 So. 3d 927, 944 (¶60) (Miss. 2011).

## DISCUSSION

¶9. On appeal, Lott argues that the testimony of the State's CI was unreliable and could not sustain a conviction for the sale of a controlled substance. Lott maintains that Armonzo Hilton was responsible for the sale of drugs to Cromwell. He points out that Cromwell was acting as a CI in exchange for consideration of his own drug charges, that Cromwell was motivated to say he bought the methamphetamine from Lott, and that there is no audio or video corroborating his testimony. Lott also notes Cromwell's inconsistent testimony about his arrests and says his recollection of the drug-buy was "sketchy, at best." Lott specifically points to the fact that Cromwell contradicted his written statement that Hilton handed the drugs to Lott when he testified that he did not actually see Hilton.

¶10. When there is conflicting or inconsistent testimony, "the jury is the final arbiter of a witness's credibility." *Robinson v. State*, 227 So. 3d 423, 426 (¶14) (Miss. Ct. App. 2017) (quoting *Williams v. State*, 794 So. 2d 1019, 1028 (¶59) (Miss. 2001)). The Mississippi Supreme Court has consistently "stood by the precept that the credibility of a witness [, even a CI,] is solely for the jury to weigh and consider." *Thomas v. State*, 195 So. 3d 843, 850-51 (¶20) (Miss. Ct. App. 2016) (quoting *Miller v. State*, 983 So. 2d 1051, 1054 (¶14) (Miss. 2008)).

¶11. Similarly positioned is *Wallace v. State*, 139 So. 3d 75 (Miss. Ct. App. 2013). In *Wallace*, Sam Wallace was convicted of one count of selling cocaine to a CI. *Id.* at 76 (¶2). At trial, the CI was questioned about the drug charges pending against him. *Id.* at 78 (¶9). He then testified that he bought the cocaine from Wallace, but there was no audio or video documenting the actual exchange of drugs and money. *Id.* at (¶12). The police testified about their physical surveillance of the events surrounding the transaction. *Id.* at 76-77 (¶¶3-4). There was also testimony that the CI returned from the meeting with Wallace with cocaine he did not have before the meeting and without the $100 he had been given to buy the drugs. *Id.* at 78 (¶12). Wallace was convicted and argued that the conviction was against the overwhelming weight of the evidence. *Id.* at (¶11). In upholding the verdict against Wallace, this Court held that "it was [the] jury's duty to weigh [the CI's] testimony for his sincerity and credibility." *Id.* at (¶9).

¶12. As in *Wallace*, the verdict against Lott was not against the overwhelming weight of the evidence. The jury in this case had the opportunity to evaluate Cromwell's testimony about his prior arrests and his arrangement with Metro Narcotics. Agent Brewer testified about surveilling Cromwell. There was testimony that Cromwell returned from the controlled buy with methamphetamine he had not previously been in possession of, as well as the correct amount of change.

¶13. This Court held that "[t]he jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. The jury has the duty to determine the impeachment

value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity." *Id.* at (¶8) (quoting *Ford v. State*, 737 So. 2d 424, 425 (¶8) (Miss. Ct. App. 1999)). Here, we find that reasonable jurors could have found Lott guilty based on the evidence presented at trial and that affirming the judgment will not sanction an unconscionable injustice. Therefore, finding no error, we affirm.

¶14. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**