# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01016-COA

**LAFREDRICK BROOKS A/K/A LAFREDRICK VENTRELLE BROOKS A/K/A LAFREDERICK VONTRELL BROOKS A/K/A FRED BROOKS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/2022 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA BUTLER CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/13/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. LaFredrick Brooks was convicted by a Lowndes County Circuit Court jury for burglary of a dwelling (Count I), simple assault domestic violence (Count II), and possession of a firearm by a felon (Count III). The circuit court sentenced Brooks to twenty-five years, with five years suspended and twenty years to serve, in the custody of the Mississippi Department of Corrections (MDOC) and five years of post-release supervision for Count I. The court sentenced Brooks to serve ten years in the custody of MDOC for Count III. Additionally, the circuit court sentenced Brooks to serve six months in the county jail for

Count II. Brooks' sentences were ordered to run consecutively.

¶2. After the denial of his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, Brooks filed a notice of appeal. On appeal, Brooks claims that his conviction for possession of a firearm by a felon (Count III) was against the overwhelming weight of the evidence. We affirm Brooks' conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶3. Around 4:00 a.m. on June 5, 2021, Derranique Jordan called 911 but hung up without providing any information. The dispatcher noted that the call was a "possible scare tactic call." In another call, Jordan provided her address but then hung up again. Finally, Jordan told the dispatcher that LaFredrick Brooks had broken into her apartment and shot a gun inside her apartment in Columbus, Mississippi.[1]

¶4. When Officer Zachary Herrington arrived at the scene, Jordan did not appear to have any injuries but was visibly upset. Jordan explained to Officer Herrington that Brooks—the father of two of her children—had kicked in the apartment door and then kicked in the bedroom door where she was hiding. Then Brooks shot at her before fleeing the apartment. According to Officer Herrington, physical evidence at the scene corroborated Jordan's statement. Officer Herrington testified that it appeared that both doors had been kicked in and that a struggle had occurred. Additionally, Officer Herrington found a shell casing on the bedroom floor, a bullet hole in the wall between the bedroom and living room, and a

---

[1] The 911 calls were admitted into evidence at Brooks' trial.

bullet and bullet fragment in the living room.[2]

¶5.     Investigator Christopher Ware testified that he obtained written statements from Jordan as well as Sidney Westmoreland who appeared at the scene during the investigation. In her written statement, Jordan reiterated that Brooks broke into her house, shot a gun at her, and then ran out the back door.  In her written statement, Westmoreland said that she was asleep on the couch when Brooks broke into the apartment and that Brooks had a gun and was threatening to shoot it.  Eventually, Brooks was arrested.

¶6.     At Brooks' trial, Jordan testified that she still cared about Brooks and did not want him to be prosecuted.  Then Jordan testified that she lied to law enforcement about what happened.  At that point, the circuit court allowed the prosecutor to treat Jordan as a hostile witness.

¶7.     Jordan testified that she and Brooks had a disagreement that resulted in Brooks taking his belongings and leaving the apartment.  Later that night, she and her friend, Westmoreland, went to the club.  When they returned to the apartment, Westmoreland fell asleep on the couch, and Jordan went to her bedroom.  Around 4:00 a.m., Brooks kicked in the apartment door.  Jordan testified that she came out of her room with her gun in her hand. Then she and Brooks struggled over the gun.  According to Jordan, her finger was on the trigger when the gun went off, but both of their hands were on the gun.

¶8.     Jordan testified that she reconciled with Brooks a couple of days after the incident. She indicated that she had regular conversations with Brooks after the incident, but she

---

[2] Footage from Officer Herrington's body camera as well as photographs of the apartment were admitted into evidence.

3

denied that she had asked Brooks how to testify at trial. At that point, the circuit court removed the jury from the courtroom and explained the consequences of committing perjury to Jordan. Additionally, the judge listened to two phone calls between Jordan and Brooks that were recorded while Brooks was in jail. Although Jordan was later questioned about the phone calls on direct examination, it does not appear that the recordings were admitted into evidence.

¶9. The jury returned to the courtroom, and the prosecutor asked Jordan about the phone calls. Jordan admitted that during a phone call in November 2021, she asked Brooks what she needed to do, and she told him that she would speak with whomever in order to get the charges dropped. She admitted that during another phone call in March 2022, she told Brooks that she would not appear in court. But if she did appear in court, the judge would not like what she had to say. Jordan admitted that she was wearing an orange jumpsuit because she did not appear for court as she was required.

¶10. According to Jordan, she was initially scared to tell law enforcement that she shot the gun. She also indicated that she lied to law enforcement because she was upset that Brooks would not spend the night with her. Finally, Jordan testified that she told Westmoreland what to tell law enforcement on the night of the incident.

¶11. Westmoreland, however, testified that she told the truth in her written statement. At trial, she reiterated that Brooks was holding a gun when he entered the apartment and that she heard a gunshot while she was running away from the apartment. According to Westmoreland, she returned to the apartment to gather her belongings. Finally,

4

Westmoreland testified that after the incident Jordan had warned her to stay out of it.

¶12. The State introduced evidence of Brooks' prior conviction, and ultimately the jury convicted him of burglary of a dwelling, simple assault domestic violence, and possession of a firearm by a felon.

## DISCUSSION

¶13. We must decide whether the circuit court erred in finding the jury's verdict for felon in possession of a firearm (Count III) was not against the overwhelming weight of the evidence.

¶14. In reviewing a challenge to the weight of the evidence, "this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *McNair v. State*, 346 So. 3d 512, 518 (¶28) (Miss. Ct. App. 2022) (quoting *Grace v. State*, 281 So. 3d 986, 992 (¶18) (Miss. Ct. App. 2019)). "The evidence is weighed in the light most favorable to the verdict." *Id*. "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*. (quoting *Thompson v. State*, 302 So. 3d 1230, 1234 (¶11) (Miss. Ct. App. 2020)).

¶15. Brooks argues that because Jordan testified that she lied about what happened, the jury's verdict was against the overwhelming weight of the evidence, purportedly entitling him to a new trial. In support of his argument, Brooks notes that Jordan testified at trial that he did not bring a gun into the apartment or shoot at her. Instead, she came out of her bedroom with her gun in her hand. It is worth noting, however, that Jordan admitted at one

5

point that both of their hands were on the gun.

¶16. Regardless, the jury determined the credibility of Jordan's statements. And this Court has held that "[t]he jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity." *Lott v. State*, 305 So. 3d 432, 435 (¶13) (Miss. Ct. App. 2020) (quoting *Wallace v. State*, 139 So. 3d 75, 78 (¶8) (Miss. Ct. App. 2013)). At trial, the State presented evidence that on the night of the incident, Jordan told law enforcement that Brooks had kicked in the apartment door and then kicked in the bedroom door where she was hiding. Then Brooks shot at her before fleeing the apartment. Additionally, Jordan provided a written statement to law enforcement in which she stated that Brooks had broken into her house, shot a gun at her, and then ran out the back door. Officer Herrington testified that the physical evidence at the scene was consistent with Jordan's initial statement, and when asked if he had found a handgun at the scene that was registered to Jordan, he responded, "I did not on the scene. No."

¶17. Additionally, Jordan admitted at trial that she still cared about Brooks—the father of two of her children—and did not want him to be prosecuted. She also admitted that she told Brooks after the incident that she would speak with whomever she needed in order to get the charges dropped. And she admitted that she told Brooks that the judge would not like what she had to say if she appeared in court.

¶18. Finally, although Jordan testified that she told Westmoreland what to tell law enforcement after the incident, Westmoreland testified that she told the truth in her written statement. Westmoreland said in her written statement and reiterated at trial that Brooks was

holding a gun when he broke into the apartment.

¶19. Ultimately, the jury evaluated Jordan's credibility, demeanor, and the weight of her testimony. The circuit court did not err by finding the jury's verdict was not against the overwhelming weight of the evidence, nor does it result in an unconscionable injustice. Therefore, we affirm Brooks' conviction and sentence.

¶20. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., AND WESTBROOKS, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**