# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01709-COA

**GARY LYNN JENNINGS**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2019 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN SAMUEL GRANT IV |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 02/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     A Calhoun County Circuit Court jury convicted Gary Lynn Jennings of the sale of a controlled substance pursuant to Mississippi Code Annotated section 41-29-139(a)(1) (Supp. 2016).  The circuit court sentenced Jennings as a habitual offender to serve thirty years in the custody of the Mississippi Department Corrections (MDOC) without eligibility for early release or parole.  Jennings filed a motion for a new trial or to vacate the judgment, which the circuit court denied.

¶2.     Jennings now appeals.  On appeal, Jennings argues that (1) his conviction should be reversed and his case be remanded for a new trial because the jury was not instructed on an

essential element of the charged crime; (2) the circuit court erred by finding that it had no discretion to reduce Jennings's sentence; (3) the circuit court erred by failing to conduct a full *Batson*[1] analysis; (4) his conviction should be reversed because there was insufficient evidence presented on an essential element of the charged crime or, alternatively, that the verdict was against the overwhelming weight of the evidence; and (5) his conviction must be reversed because he received ineffective assistance of counsel. Upon review, we find that the circuit court failed to instruct the jury on an essential element of the charged crime—that Jennings knowingly and intentionally sold a controlled substance. Accordingly, we reverse Jennings's conviction and sentence and remand this case for a new trial. We also find that had the jury been properly instructed, the State offered sufficient evidence to support Jennings's conviction for the sale of a controlled substance; therefore, we find that the circuit court did err in denying Jennings's posttrial motion to vacate the judgment on this ground.

**FACTS**

¶3. In 2017, Mississippi Bureau of Narcotics agents arrested Jennings for selling methamphetamine to a confidential informant. Jennings was subsequently indicted for selling methamphetamine pursuant to section 41-29-139(a)(1). Jennings's indictment charged that on April 25, 2017, Jennings

> did unlawfully, willfully, feloniously, knowingly and intentionally, without authority of law, sell and/or transfer more than ten (10) grams, but less than thirty (30) grams, of a certain controlled substance, to-wit: 26.651 grams of

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

2

Methamphetamine, which is a Schedule II controlled substance . . . to [a] [c]onfidential [i]nformant . . . (CI), and did receive from the said CI the sum of Four Hundred Dollars ($400.00) in good and lawful money . . . for the said controlled substance, in violation of the provisions of [s]ection 41-29-139(a). . . .

Upon the State's motion, the circuit court amended Jennings's indictment to reflect Jennings's status as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015), based on Jennings's prior convictions.

¶4. A jury trial was held August 13-14, 2019. During the trial, the jury heard testimony from the following witnesses for the State: Jon Lepicier, an agent with the Mississippi Bureau of Narcotics who facilitated the controlled purchase; Erik Frazure, who worked with the Mississippi Forensics Laboratory, who identified the substance recovered from the controlled purchase as methamphetamine; and Kenneth Jaco, the confidential informant who performed the controlled purchase. After the State rested, the defense moved for a directed verdict, which the circuit court denied.

¶5. The jury ultimately returned a verdict, finding Jennings guilty of the sale of a controlled substance. Before sentencing, the State sought to have the circuit court sentence Jennings as a nonviolent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015). The circuit court accordingly sentenced Jennings as a habitual offender pursuant to section 99-19-81 to serve thirty years in the custody of the MDOC without eligibility for early release or parole. During sentencing, the circuit court judge stated his belief that "the [c]ourt is . . . legally obligated to impose the statutory maximum

3

for the crime for which the defendant has been convicted here today."

¶6. Jennings filed a motion for a new trial and an amended motion for a new trial or to vacate the judgment. In his amended motion, Jennings argued that "the instructions given to the jury were improper, and were in violation of the defendant's constitutional rights." He also challenged the sufficiency and weight of the evidence, the legality of his sentence, and jury selection and its composition.

¶7. The circuit court denied Jennings's posttrial motion. During this time, the circuit court judge expressed that "I think the court should have discretion to sentence him to something other than the maximum. But, I don't have that discretion and I can't exercise discretion that I don't have. So I gave him the only sentence that the law allows and I'm not proud of that, Mr. Jennings. It's just the way, that is part of my job."

¶8. This appeal followed.

## DISCUSSION

### I. Jury Instructions

¶9. Jennings first asserts that he was denied his fundamental right to due process when the trial court failed to instruct the jury on an essential element of the charge against him. Specifically, Jennings argues that the trial court did not instruct the jury that they must find that Jennings "knowingly or intentionally" sold a controlled substance, as required by section 41-29-139(a)(1). As a result, Jennings argues that his conviction for selling methamphetamine must be reversed. We agree. For the reasons set forth below, we reverse

4

Jennings's conviction and sentence based upon this assignment of error and remand this case for a new trial.

¶10. Jennings was indicted for selling a controlled substance under section 41-29-139(a)(1), which provides, "Except as authorized by this article, it is unlawful for any person *knowingly or intentionally*: (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance[.]" Miss. Code Ann. § 41-29-139(a)(1) (emphasis added). Therefore, "[a]n essential element of the crime with which [Jennings] was charged was that he had knowledge that he was selling or transferring a controlled substance and that he intended to do so." *Hale v. State*, 191 So. 3d 719, 724 (¶11) (Miss. 2016).

¶11. The transcript reflects that during the jury instruction conference, the State submitted Instruction S-1-A,[2] which purported to provide the elements of the charged offense of sale of a controlled substance. Instruction S-1-A stated as follows:

> The Defendant, Gary Lynn Jennings, is charged in the Indictment with the felony crime of selling and/or transferring 26.651 grams of Methamphetamine, a Schedule II controlled substance as provided for by the laws of the State of Mississippi.
>
> If you find beyond a reasonable doubt from the evidence in this case that:
>
> 1. On or about April 25, 2017,

---

[2] The circuit court initially accepted the State's jury instruction S-1. However, after discovering an error in Instruction S-1 regarding the amount of controlled substance allegedly sold, the trial court ordered that Instruction S-1 be corrected. The corrected instruction was renamed and given to the jury as Instruction S-1-A.

2. In Calhoun County, Mississippi,

3. Gary Lynn Jennings sold and/or transferred more than ten (10) grams, but less than thirty (30) grams, of Methamphetamine, a Schedule II controlled substance, to Kenneth Jaco,

Then you shall find the Defendant guilty as charged in the indictment, in which case you should write your verdict on a separate piece of paper provided to you by the Court for that purpose in the following form:

"We, the jury, find the Defendant, Gary Lynn Jennings, guilty of Sale of a Controlled Substance under the Indictment."

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Gary Lynn Jennings, not guilty, in which case you should write your verdict on a separate sheet of paper provided to you by the Court for that purpose in the following form:

"We, the jury, find the Defendant, Gary Lynn Jennings, not guilty of Sale of a Controlled Substance under the Indictment."

As shown, Instruction S-1-A omits the statutory element that Jennings must have "knowingly or intentionally" sold methamphetamine. Jennings did not object to this instruction, and the record reflects that Instruction S-1-A was given to the jury. The record reflects that Instruction S-1-A was the only instruction given to the jury that provided them with the law regarding Jennings's charged offense. Based on this instruction, the jury found Jennings guilty of selling a controlled substance.

¶12. The transcript further reflects that during the jury instruction conference, the defense proposed Instruction D-5 that included all of the essential statutory elements of the charge against Jennings. The proposed instruction stated as follows:

6

Gary Lynn Jennings is charged with selling methamphetamine.

If you find beyond a reasonable doubt from the evidence in this case that:

1. On or about April 25, 2017, in Calhoun County, Mississippi;

2. Gary Lynn Jennings knowing [sic] or intentionally and without authority of law sold;

3. Methamphetamine in the amount of 26.651 grams;

4. To Kenneth Jaco;

then you shall find the defendant guilty as charged.

If the prosecution did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find Gary Lynn Jennings "Not Guilty."

¶13. During consideration of Instruction D-5, the circuit court commented, "It's the second half of S-1[-A], I believe, is it not?" Defense counsel, apparently also believing that Instruction D-5 contained the same elements set forth in Instruction S-1-A, responded, "I don't feel the need to offer it twice." As a result, Instruction D-5 was withdrawn and not given to the jury.

¶14. As stated, the record reflects that Jennings did not object to Instruction S-1-A. Generally, "[t]o preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the circuit court to consider the issue." *Hodges v. State*, 285 So. 3d 711, 720 (¶35) (Miss. Ct. App. 2019) (quoting *Caffie v. State*, 269 So. 3d 1203, 1205 (¶11) (Miss. Ct. App. 2018)). However, "instructing the jury on every

7

element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object at trial." *Id*. at (¶36) (quoting *Chesney v. State*, 165 So. 3d 498, 503 (¶10) (Miss. Ct. App. 2015)) (citing *Pollard v. State*, 932 So. 2d 82, 87 (¶11) (Miss. Ct. App. 2006) ("[T]he trial court committed plain error by adopting an instruction that did not fully instruct the jury on the elements of the crime; thus, the procedural bar [based upon counsel's failure to object] does not apply.")). We therefore review this issue for plain error. *Id*.; *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013) ("[T]he failure to instruct the jury on the essential elements of the crime is plain error.").

¶15. In so doing, we recognize that jury instructions "are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012). In Jennings's case, Instruction S-1-A was the only instruction given to the jury that provided the elements of the charged crime. In Instruction C-1, the circuit court instructed jurors that they were "duty bound to apply the law as stated in these instructions to these facts as you find them from the evidence before you" and that "it would be a violation of your sworn duty to base your verdict upon any other view of the law than that given." We thus find the omission of the element regarding whether Jennings had knowledge that he was selling or transferring methamphetamine and that he intended to do so "particularly relevant in the light of the [circuit] court's general instructions to the jury." *Hodges*, 285 So. 3d at 721 (¶40). After our review, we find that the jury instructions, read

8

as a whole, omitted the essential element that the jury find that Jennings knowingly and intentionally sold a controlled substance.

¶16.   The State agrees that the jury was not properly instructed that they had to find that Jennings sold the methamphetamine "knowingly or intentionally." However, the State argues that because Jennings "invited the error" by withdrawing the instruction that would have properly instructed the jury on the elements of the charged offense (Instruction D-5), then no reversible error occurred.  The State further maintains that whether Jennings invited the error intentionally or by accident does not matter; the result is the same.

¶17.   Under the invited-error doctrine, "a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018).  The supreme court has explained that the purpose of this doctrine is to "bind trial counsel to strategic decisions inducing judicial rulings with the purpose of obtaining favorable judgments for their client[]" and to prevent trial counsel from "requesting [that] a judge act in a particular way to salt the record with error as an end in itself, thereby providing potential grounds for reversal of an adverse judgment." *Id*. at (¶56) (quoting *State v. Hargrove*, 293 P.3d 787, 790 (Kan. Ct. App. 2013)).

¶18.   In *Thomas*, the appellant argued that the trial court erred by failing to instruct the jury on the elements of the underlying offense of his capital-murder charge.  *Id*. at 347 (¶54).  On appeal, the supreme court found that "Thomas's defense counsel requested that the trial court not instruct the jury on the elements of robbery." *Id*.  The supreme court recognized its prior

9

holding in *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014), which expressed that "it is the trial court's responsibility to assure that the jury is 'fully and properly instructed on all issues relevant to the case.'" *Thomas,* 249 So. 3d at 349 (¶63).[3] However, the supreme court explained that "defense counsel invited this error[,]" and therefore "*Harrell . . .* does not control here." *Id*. The supreme court accordingly held that "[t]he invited-error doctrine prohibits us from considering this issue." *Id*. at 350 (¶65). In applying this doctrine, the supreme court distinguished the facts in *Thomas* from cases in which the invited-error doctrine did not apply:

> It is important to note what this case is not. This is not a case in which the defendant successfully objected to the language of an elements instruction and the court neglected to correct the error or substitute language. Neither is this a case in which the State successfully objected to the language of an instruction to which the defendant was otherwise entitled and the court failed to substitute appropriate language. *Finally, this is not a case in which a defendant negligently or inadvertently failed to object to a flawed elements instruction.* Instead, it is a case in which the error might more appropriately be referred to as "demanded" by the defendant rather than "invited."

*Id.*, 249 So. 3d at 347-48 (¶58) (citations omitted) (emphasis added).

¶19. In the present case, unlike *Thomas*, both Jennings's attorney and the circuit court judge appeared to (mistakenly) believe that Instruction S-1-A properly instructed the jury on the elements of sale of a controlled substance and that Jennings's proposed Instruction D-5 was cumulative of Instruction S-1-A. We therefore find that the invited-error doctrine does

---

[3] We also recognize that "the State bears the burden of ensuring that the jury is properly instructed as to the elements of the crime[.]" *Thomas*, 249 So. 3d at 349 (¶64).

not apply, nor does it bar our review of this issue.

¶20.    In the recent case of *Hodges*, 285 So. 3d at 713 (¶4), this Court found that the circuit court's failure to instruct the jury on an essential element of the charged crimes constituted plain error.  Accordingly, this Court reversed the appellant's convictions and sentences and remanded the case for a new trial.  *Id*.  As in the case before us, the defense counsel in Hodges "did not object to the State's proposed jury instructions on the elements for . . . [the charged offense].  Rather, he withdrew his proposed instructions on the elements for manslaughter, stating, 'I think mine pretty much say[ ] the same thing as S-1 and S-2.'" *Id*. at 718 (¶30).  Upon review, this Court found that the instructions given to the jury in *Hodges* "omit[ted] the essential element that the jury find that Hodges knew that his dogs had a dangerous propensity." *Id*. at 721 (¶40).

¶21.    Because our precedent is clear that "it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element," we reverse and remand for a new trial on this issue.  *Harrell*, 134 So. 3d at 275 (¶30); *see also Bolton*, 113 So. 3d at 544 (¶4); *Hodges*, 285 So. 3d at 722 (¶42).

¶22.    The other issues on appeal before us are (1) whether the circuit court erred in finding that it lacked the discretion to sentence Jennings to less than the maximum amount; (2) whether the State committed a *Batson* violation; (3) whether Jennings's conviction should be reversed because there was insufficient evidence presented, or, alternatively, whether the verdict was against the overwhelming weight of the evidence; and (4) whether Jennings

11

received ineffective assistance of counsel.[4]  Although we have found that it was plain error

when the circuit court failed to instruct the jury on an essential element of the sale of a

[4] "Given our holding to reverse and remand for a new trial on other grounds, [Jennings's] claim that there was a *Batson* violation is now moot." *Sawyer v. State*, 2 So. 3d 655, 661 (¶29) (Miss. Ct. App. 2008).  Additionally, we will "not address [Jennings's] ineffective-assistance-of-counsel claim because 'our supreme court has held that if a case is reversed on other grounds, a claim of ineffective assistance is moot.'" *Hodges*, 285 So. 3d at 723 (¶49) (quoting *Husband v. State*, 204 So. 3d 353, 360 (¶19) (Miss. Ct. App. 2016)).

As to Jennings's claim that the circuit court judge incorrectly found that he lacked the discretion under section 99-19-81 to sentence Jennings to less than the maximum amount, this Court has held that a circuit court judge has the authority to reduce the sentence of a non-violent habitual offender. *Meisner v. State*, 203 So. 3d 766, 769 (¶9) (Miss. Ct. App. 2016).  As stated, in the present case, the circuit court ultimately sentenced Jennings as a non-violent habitual offender under section 99-19-81.  The Legislature amended section 99-19-81 in 2018 to provide the circuit court with the discretion to sentence non-violent habitual offenders to less than the maximum.  *See* Miss. Code Ann. § 99-19-81 (Supp. 2018).  As acknowledged by Jennings, this amended language was not in effect at the time Jennings allegedly committed the charged crime.  When interpreting the pre-amended version of section 99-19-81, this Court has held:

> While the habitual-offender-enhancement statute requires circuit judges to impose the maximum sentence for habitual offenders under [section 99-19-81], Mississippi law recognizes limited circumstances in which a circuit judge may impose upon a habitual offender a reduced sentence. *See Pool v. State*, 724 So. 2d 1044, 1049-50 (¶¶28-31) (Miss. Ct. App. 1998); *Clowers v. State*, 522 So. 2d 762, 764 (Miss. 1988); *Triplett v. State*, 840 So. 2d 727, 732 (¶18) (Miss. Ct. App. 2002).

*Meisner*, 203 So. 3d at 768-69 (¶6).  In *Meisner*, the defendant "was rendered a habitual offender due to his past crimes . . . [and accordingly] should have been sentenced to the maximum term of imprisonment . . . ." *Id*. at 769 (¶8).  During sentencing, the circuit court judge "took into consideration [the defendant's] testimony and mitigating evidence" and sentenced the defendant to less than the maximum. *Id*.  On appeal, this Court held that "It is evident that the circuit judge was vested with authority to issue a reduced sentence despite [the defendant's] habitual-offender status." *Id*. at (¶9); *see also Jackson v. State*, 263 So. 3d 1003, 1020 (¶60) (Miss. Ct. App. 2018), *cert. denied*, 263 So. 3d 665 (Miss. 2019).

controlled substance charge against Jennings, we will address Jennings's claim regarding the sufficiency of the evidence. The supreme court has held that "a challenge to the sufficiency of the evidence should be addressed on appeal, even where the appellate court determines that reversal and remand is warranted based upon an evidentiary error in the trial court." *Hodges*, 285 So. 3d at 713 n.1 (citing *Newell v. State*, 175 So. 3d 1260, 1267-68 (¶5) (Miss. 2015)). We recognize that "a finding for [Jennings] on this claim would result in a reversal and rendering of the judgment in his favor." *Id.* at 722 (¶43).

## II.     Sufficiency of the Evidence

¶23.    Jennings claims that the State failed to present enough proof to show beyond a reasonable doubt that Jennings sold a substance he knew to be methamphetamine, and, as a result, this Court should reverse and render.

¶24.    "In reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. State*, 275 So. 3d 100, 109 (¶28) (Miss. Ct. App. 2019). The reviewing court "must accept as true all credible evidence consistent with guilt" and give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015) (quoting *Ginn v. State*, 860 So. 2d 675, 685 (¶31) (Miss. 2003)). This Court may reverse when, "with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors

13

could only find the accused not guilty." *Id.*

¶25.    As stated, the jury heard testimony from three witnesses for the State.  Agent Lepicier with the Mississippi Bureau of Narcotics (MBN) testified that he facilitated the controlled purchase of the methamphetamine.  Agent Lepicier testified that as part of the controlled purchase, he instructed Jaco, the confidential informant, to call Jennings to make arrangements for the transaction.  The State played a recording of this phone call for the jury.  During the trial, the State asked Agent Lepicier about the conservation between Jaco and Jennings.  The State also asked Agent Lepicier about the terms used by Jaco and Jennings during the phone call.  Agent Lepicier testified that these terms were the typical "street terminology" used for purchasing methamphetamine:

> [State]:      [Jaco] asked [Jennings] how much are you going to charge me for a whole one.  What's a whole one?
>
> [Lepicier]:  A whole one is typically an ounce of drugs.  Usually methamphetamine—and in this case it was methamphetamine.  That was what we were going to be purchasing. Street terminology you don't ask for an ounce.  You ask for a whole one or various other terms.  A whole one is referring to one ounce of methamphetamine.
>
> [State]:      Mr. Jaco asked Mr. Jennings how much he was going to charge him.   He responded $4.   Does that have some street interpretation?
>
> [Lepicier]:  It does.  Typically during phone calls, the suspects don't want to disclose any more information than they have to over the phone for obvious reasons; and they will use terminology to try to get around what they're saying, I guess.  Four dollars, we knew that he said a whole one.  Four dollars is indicative of $400 on the street.  It's very common to say $1, $2, $3, or $4 referring to

14

$100, $200, $300, 400; and in this case there was no doubt in my mind that $4 meant $400.

Agent Lepicier also testified that in April 2017, an ounce of methamphetamine typically cost $400.

¶26.    Agent Lepicier stated that he instructed Jaco to check during the phone call to make sure that Jennings had drugs, explaining "That's why [Jaco] asked [Jennings] if he was still straight." Agent Lepicier testified that "[a]sking somebody on the street if they are straight means, Do you have drugs." Agent Lepicier clarified that during the phone call, "[Jaco] asked [Jennings] if he was straight, and [Jennings] said, Yes, what's up." Agent Lepicier testified that he "interpreted that as [Jennings] had drugs, he was ready to sell[.]" During the phone call, Jennings also instructed Jaco where to meet him.

¶27.    Agent Lepicier testified that immediately before the controlled purchase, he and another MBN agent met with Jaco. At that time, Agent Lepicier and the other agent searched Jaco and his vehicle to make sure he did not possess any contraband. Agent Lepicier then provided Jaco with audio visual equipment to record the controlled purchase. After the controlled purchase, Jaco drove to the "post buy location" to meet the MBN agents. Agent Lepicier testified that when Jaco arrived at this location, he "[i]mmediately relinquished custody of the narcotics that were purchased." Agent Lepicier testified that based on his training and experience as a narcotics agent, he believed the purchased substance to be methamphetamine. Agent Lepicier logged the substance into evidence, and MBN agents transported the substance to the Mississippi Forensics Laboratory.

15

¶28. During cross-examination, Agent Lepicier admitted that Jaco knew that if he cooperated with MBN as a confidential informant, his cooperation would be taken into consideration for Jaco's prior drug-possession charge. However, Agent Lepicier testified "[Jaco] was reliable to me before this transaction because we have conducted controlled purchases prior to this transaction, which made him reliable to me[.]"

¶29. Erik Frazure with the Mississippi Forensics Laboratory testified next as an expert in forensic science and controlled-substance analysis. Frazure identified the substance recovered from the controlled purchase as methamphetamine, and he testified regarding the weight of the substance.

¶30. Jaco testified last. Jaco explained that he knew Jennings from "around town" and that he had reason to believe that Jennings was involved in the business of supplying and distributing drugs. As part of the controlled purchase facilitated by MBN, Jaco testified that he placed a phone call to Jennings to arrange the sale. Jaco also testified regarding the terms used during the phone call. Jaco explained that when he asked Jennings what he would charge Jaco for "a whole one," he was referring to an ounce of methamphetamine. Jaco testified that Jennings responded "four dollars." Jaco explained that this meant four hundred dollars.

¶31. MBN agents provided Jaco with the money to use during the controlled purchase. Jaco testified that he met Jennings at the agreed-upon location and entered Jennings's vehicle on the front passenger side. Jennings was in the driver's seat, talking on the phone. Jaco

16

testified that he asked Jennings, "Four, right?" to make sure the price was correct. Jaco stated that after he gave Jennings the $400, Jennings then gave him a bag containing the narcotics. Jaco testified that Jennings counted the money, and Jaco exited Jennings's vehicle with the bag and returned to his own vehicle. A video of the transaction, filmed by Jaco using the audio visual equipment provided by the MBN, was played for the jury. Jaco testified that he then drove to meet Agent Lepicier. Jaco testified that he kept the bag in his lap while driving to meet Agent Lepicier, and then he handed the bag to Agent Lepicier.

¶32. Jennings argues that the State failed to present direct proof that he knowingly and intentionally sold methamphetamine, and he maintains that the circumstantial proof of Jennings's knowledge was too weak for a jury to find him guilty. Jennings further claims that no evidence was presented that Jennings was familiar with the terms of the methamphetamine trade. Jennings specifically asserts that no testimony or evidence proved that Jennings would have understood that a "whole one" meant an ounce of methamphetamine, as opposed to some other substance.

¶33. The State argues, however, that Jaco was an eyewitness to Jennings allegedly selling methamphetamine, and Jaco's testimony removed the State's burden of proving Jennings guilty under the circumstantial-evidence burden. The supreme court has held that "eyewitness testimony 'to the gravamen of the offense charged[]'" is an example of direct testimony. *Kennedy v. State*, No. 2019-KA-00028-COA, 2020 WL 4435584, at *5 (¶20) (Miss. Ct. App. June 23, 2020) (quoting *Burleson v. State*, 166 So. 3d 499, 509 (¶29) (Miss.

17

2015)), *cert. denied*, Order, No. 2019-CT-00028-SCT (Miss. Jan. 7, 2021). As stated, Jaco testified that he told Jennings that he wanted to purchase methamphetamine; that Jennings told him the price of the methamphetamine and where to meet; that upon meeting Jennings, Jaco entered Jennings's vehicle and handed him the required amount of money; and that Jennings then handed him a bag containing the substance. Testimony from Frazure confirmed that the substance in the bag was methamphetamine.

¶34. Jennings asserts that Jaco's testimony was mostly discredited. Jennings points to Jaco's admission that he had a motivation to perform in order to avoid criminal charges of his own. The transcript reflects Jaco admitted that in 2016 a Calhoun County police officer arrested him for a drug-related charge. Jaco explained that after his arrest, he began working as a confidential informant for the MBN. During cross-examination, Jaco admitted that he performed the controlled purchase as a confidential informant so that the police department would not charge him as a result of his 2016 drug-related arrest. Defense counsel asked, "So you were under the gun, and you had to perform for them, right?" Jaco responded, "I didn't have to, but I did." Defense counsel further questioned Jaco about his motivation for working with the MBN:

> Q: And you would have lied or done anything to improve your position with the police department of Calhoun City, right?
>
> A: Correct.
>
> Q: When you got in the car with Gary Lynn Jennings, you knew you had to perform or you were going to get charged, right?

18

A:    Correct.

Q:    The truth of the matter is you were under the gun and you were willing to lie to get yourself out trouble, were you not?

A.    Correct.

¶35.    Jaco also admitted the video recording of the controlled purchase does not show Jaco's hand giving Jennings the money for the drugs, nor does the video show Jennings's hand giving Jaco the bag of methamphetamine.  Although there was initially confusion during cross-examination as to whether Jaco admitted that he was under the influence of drugs at the time of the controlled purchase, Jaco later clarified that he was not using drugs at the time of the purchase.

¶36.    Regarding Jaco's credibility as a witness, "[i]t is the duty of the jury to listen to all of the testimony and determine who is a credible witness and whether the evidence supports the crime charged." *Wolverton v. State*, 859 So. 2d 1073, 1076 (¶10) (Miss. Ct. App. 2003); *see also Butler v. State*, 102 So. 3d 260, 269 (¶27) (Miss. 2012) ("[I]ssues of weight and credibility of witness testimony are within the sole province of the jury as fact finder.").  We recognize that the supreme court "consistently has stood by the precept that the credibility of a witness—'even a CI'—is solely for the jury to weigh and consider." *Thomas v. State*, 195 So. 3d 843, 850-51 (¶20) (Miss. Ct. App. 2016) (citing *Miller v. State*, 983 So. 2d 1051, 1054 (¶14) (Miss. 2008)).  Here, the record reflects that defense counsel cross-examined Jaco on the credibility issues that Jennings asserts on appeal.  In finding Jennings guilty, the jury resolved these issues in favor of the State.  "This Court will not reweigh the credibility of

19

witnesses." *Butler*, 102 So. 3d at 270 (¶27).

¶37. Furthermore, we recognize that "[g]uilty knowledge may be proved by direct evidence, or, since it is rarely the subject of direct and positive proof, by any surrounding facts or circumstances from which knowledge may be inferred." *Kelly v. State*, 124 So. 3d 717, 720 (¶6) (Miss. Ct. App. 2013). Both Agent Lepicier and Jaco testified that the terms used by Jennings and Jaco during the pre-buy phone call were terms typically used when purchasing methamphetamine. "[U]pon being properly instructed, we find that viewing the evidence in the light most favorable to the prosecution," the State presented sufficient evidence from which reasonable jurors could have found beyond a reasonable doubt that Jennings was guilty of the sale of a controlled substance. *Hodges*, 285 So. 3d at 723 (¶48).

¶38. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**